EMILIO RIVERA MALDONADO, demandante y apelante, *v.* CENTRAL PASTO VIEJO INC., demandada y apelada.

No. 5651.—*Sometido:* Mayo 19, 1932. *Resuelto:* Junio 24, 1932.

*F. Gallardo Díaz,* abogado del apelante; *Walter L. Newsom, Jr., J. Henri Brown* y *R. Castro Fernández,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Es ésta una acción de daños y perjuicios interpuesta por Emilio Rivera Maldonado contra la Central Pasto Viejo Inc. El demandante alega, entre otras cosas, que la demandada tiene establecido un ferrocarril de su pertenencia dentro de la municipalidad de Humacao y que la vía de dicho ferrocarril cruza la carretera insular que de la ciudad de Humacao conduce a Naguabo, estando dicho cruce en un sitio denominado Entrada a Pasto Viejo.

Alega además el demandante que en 22 de febrero de 1927, al pasar por dicho cruce de vía, fué atrapado por la máquina No. 4, propiedad de la demandada, y que como resultado de este accidente dicho demandante sufrió numerosas lesiones, tuvo que recluirse en cama por algún tiempo, quedando su automóvil absolutamente inservible. Declarada sin lugar la demanda, el demandante interpuso recurso de apelación atribuyendo a la corte inferior los siguientes errores:

1. La corte debió dictar sentencia por los méritos de las alegaciones a favor del demandante.

2. La corte erró porque la sentencia dictada es contraria a la ley y a los hechos.

■ Se trata en este caso de una demanda jurada. De acuerdo con el Código de Enjuiciamiento Civil, cuando se jura la demanda la negación de cada alegación impugnada deberá ser específica, y hacerse por afirmación absoluta o según información y creencia del demandado. El demandante notificó oportunamente a la demandada, que se proponía solicitar sentencia sobre las alegaciones antes de comenzarse la celebración del juicio. La demandada solicitó y obtuvo de la corte permiso para radicar una contestación enmendada. Inmediatamente después de radicada la primera contestación enmendada, el demandante solicitó sentencia sobre las alegaciones. La demandada se opuso y la corte le concedió permiso nuevamente para enmendar su contestación con la oposición del demandante, quien tomó excepción de la resolución de la corte. Después de radicada la segunda contestación enmendada, el demandante se opuso a que fuera admitida, porque ya la demandada había enmendado su contestación varias veces. La corte admitió dicha contestación, el demandante tomó excepción alegando que la nueva contestación enmendada era defectuosa y envolvía lo que en derecho se llama un "negative pregnant". Alegó además el demandante que las alegaciones de la demanda estaban admitidas puesto que el juramento de la última contestación enmendada era defectuoso. El demandante hizo constar entonces que la última contestación enmendada aceptaba las alegaciones de la demanda, que el juramento era defectuoso, y que deseaba darle todavía nueva oportunidad a la demandada para que corrigiera tales defectos. La parte demandada rechazó esta oportunidad y el demandante, sin haber solicitado sentencia sobre las alegaciones cuando fué radicada la última contestación, empezó a practicar su prueba.

Es innecesario proceder a discutir los defectos de que adolece el juramento y las admisiones contenidas en la contestación. Reconocemos que se trata de una contestación defectuosa y de un juramento defectuoso también; pero el demandante no solicitó sentencia sobre las alegaciones y está impedido para plantear esta cuestión en apelación.

En el caso de *Nelson* v. *Merced County*, 55 Pac. 421, la Corte Suprema de California se expresó en los siguientes términos:

". . . La contestación, tomada en su totalidad, en nuestra opinión hacía que la cuestión del pago fuera un hecho en controversia, y la corte debidamente resolvió el mismo. Además, las partes parecen haber procedido a celebrar el juicio con la contestación, sin hacer objeción a su suficiencia para suscitar la controversia, y se admitió prueba sobre los hechos alegados en la contestación, y la controversia fué resuelta. En tal caso no se permitirá que se presente una objeción ante esta corte por primera vez al efecto de que la conclusión a que llegó la corte no está de acuerdo con las cuestiones planteadas."

Como hemos dicho, el demandante procedió a practicar su prueba, sin insistir en su moción original para que se dictara sentencia sobre las alegaciones y sin reproducir su moción cuando se radicó la última contestación enmendada.

En el caso de *Illinois Trust & Savings Bank* v. *Pacific Ry. Co.,* 115 Cal. 285, 47 Pac. 60, dicha Corte Suprema de California dijo:

". . . Ha sido bien establecido que cuando las partes han ido a juicio fundándose en una alegación, sin presentar objeción a su suficiencia con el objeto de plantear determinada controversia, y se ha admitido prueba respecto al hecho y se ha dictado resolución sobre tal controversia, esta corte no permitirá a la parte a quien incumbía presentar la objeción decir que la resolución dictada no está en armonía con las controversias planteadas. King. v. Davis, 34 Cal. 100; Horton v. Domínguez, 68 Cal. 642, 10 Pac. 186; Moore v. Campbell, 72 Cal. 251, 13 Pac. 689; Sukeforth v. Lord, 87 Cal. 399, 25 Pac. 497."

De la obra ''Bancroft's Code Pleading,'' página 1012, sección 720, copiamos lo siguiente:

''De manera que una parte que, después de denegada su moción para que se dicte sentencia sobre las alegaciones, va a juicio y trata de establecer su derecho mediante prueba, renuncia a la moción.''

Véanse también los casos de *Guzmán López* v. *Ortiz,* 39 D.P.R. 185 y *Paulson* v. *Bergman,* 62 Colo. 93, 160 Pac. 189.

Declara el demandante entre otras cosas que al llegar al paso a nivel de la vía que cruza la carretera que de Humacao conduce a Naguabo, detuvo el vehículo cerca de dicha vía y, viendo que no sentía nada, metió primera para pasar la vía y en ese momento apareció la máquina y le dió al vehículo por su lado derecho tirándolo a una cuneta. Esta declaración está corroborada por el testigo Pedro Vasallo, quien acompañaba a Emilio Rivera cuando ocurrió el accidente. Este testigo dice que cuando iban por el cruce de Pasto Viejo, que es un paso a nivel que queda entre Humacao y su playa, apareció una locomotora a bastante velocidad y arrolló al Ford, tirando a éste a la cuneta de la derecha de la carretera, cayendo el testigo y Emilio Rivera fuera del automóvil, y recibiendo este último golpes en la cara, en las manos y en ambas rodillas. El automóvil, dice, quedó inservible. Ambos testigos declaran que la locomotora no tocó pito ni campana.

La negligencia de la corporación demandada surge de su propia prueba. Sus testigos están conformes en que al llegar al cruce de la carretera hay una pendiente y en que para subir esta pendiente, cuando el tren lleva mucha carga, la máquina tiene que desarrollar velocidad. Cuando la carga es poca se puede caminar despacio, pero cuando es mucha hay que caminar ligero. Estos testigos, que son empleados de la demandada, dicen que la máquina llevaba velocidad, y el fogonero de la locomotora, Sotero Pizarro, declara que ''la máquina venía a un paso bastante agigantado''. El maquinista Rafael García declara que a la máquina se le per-

dieron los reflectores y que cuando ocurrió el accidente tenía los faroles de gas, dos farolitos de gas pequeños. El testigo Julio Luzunaris declara que es mecánico y que trabaja en la Central Pasto Viejo; que el día 22 de febrero de 1927 iba conduciendo para la central un tren de cañas detrás de la máquina No. 4; que vió a esta máquina cruzando el paso a nivel donde ocurrió el accidente y que de noche no ponen persona alguna allí para hacer señales a los carros que vienen pasando, y que la noche del accidente no había nadie para hacer tales señales; que a veces el testigo ha estado expuesto, en el sitio donde ocurrió el accidente, a pasarle algo, porque es una curva, siendo aquel sitio peligroso; que el testigo se quejó varias veces a sus superiores de ese peligro, temiendo que pudiera ocurrir alguna desgracia; que se lo dijo al jefe del tráfico, pues el testigo era quien trabajaba de noche; que a pesar de eso no había nadie para hacer señales ni pusieron a nadie allí después; que debido a las pendientes antes y después de la carretera es preciso darle velocidad a la máquina para subir desde el llano, y que cuando va la máquina más ligero es cuando pasa la carretera.

Declaran también los testigos de la demandada que se tocó pito y campana antes de llegar al paso a nivel de la carretera. El maquinista dice que cuando suena el pito se descarga vapor, pero muy poca cosa, y que cuando sube una pendiente no se le puede descargar vapor a la máquina.

La corte inferior, en sus conclusiones de hecho, dice:

"Que en el sitio en cuestión la demandada no tiene establecidas barreras, cadenas o cualquier otro aparato análogo a ellas para la protección de los transeúntes y que en la noche de autos, tampoco existían luces rojas ni persona alguna encargada de dar aviso a los transeúntes que pasaban por la carretera, de la aproximación del dicho ferrocarril."

La prueba de la demandada basta por sí sola para poner de relieve su negligencia. La demandada, a pesar de que uno de sus empleados se quejó de lo peligroso del sitio, no se cuidó de establecer barreras ni cadenas, ni de adoptar

ninguna medida para la protección de los transeúntes; ni siquiera colocó un guardia para vigilar y avisar la aproximación del tren durante las horas de la noche. Estas precauciones, que deben adoptarse siempre para beneficio del público, son aun más necesarias en un caso como el presente, en que los mismos testigos de la demandada nos dicen que cuando el tren va muy cargado la máquina tiene que desarrollar velocidad para subir la pendiente y que cuando va más ligero es cuando cruza la carretera. De modo que la demandada, además de no haber adoptado las precauciones mencionadas, permitió que el tren llevara una carga pesada, sabiendo que la máquina tenía que desarrollar velocidad para subir la pendiente y cruzar el paso a nivel.

La corte inferior reconoce la negligencia de la parte demandada, pero falla el pleito en contra del demandante, basándose en la negligencia contribuyente de éste. Copiamos a continuación los fundamentos que sirven de base a la corte inferior para dictar su fallo:

"La prueba en el particular resulta en un todo contradictoria. Los testigos de la demandada sostienen que el ferrocarril al acercarse al cruce, hizo uso del pito de vapor, así como de la campana, hecho que se niega por el demandante y a la vez por un testigo que venía en el automóvil en su compañía. Sostiene el demandante que al acercarse al sitio del accidente, él paró su carro, miró y oyó, sin que percibiera nada que le demostrara la aproximación del tren.

"Como ya dijéramos, la vía, por varios metros antes de llegar al cruce, corre casi paralela a la carretera, el ruido que hace un tren que arrastra treinta vagones, el hecho de ocurrir el accidente durante las horas de la madrugada, tiempo en que el silencio es completo y absoluto y mucho más aún en el campo, en donde no existe movimiento alguno, nos hacen dudar grandemente de que el demandante, si en verdad paró su automóvil, miró y trató de oír, no oyera el tren que se aproximaba y que tan cerca de él estaba, aun suponiendo que la locomotora no avisara por medio del pito y de la campana. El testigo del demandante, Cándido Báez, nos dice que él vió venir un carro y al pasar por la vía lo cogió la máquina, sin decirnos que el automóvil estuviera parado, sino que venía a cruzar en aquellos momentos el paso nivel.

"Si aceptamos la teoría de la demandada, que sus empleados tocaron el pito y la campana al acercarse al cruce, es claro y evidente que el demandante fué negligente al tratar de cruzar el paso a nivel, teniendo aviso de que el tren se aproximaba; si por el contrario asumiéramos que el demandante paró su carro, miró y trató de oír, nos parece inexplicable cómo durante el silencio de la noche, dada la situación de la vía en relación con la carretera y la proximidad del tren, él y su compañero no se dieron cuenta, por el ruido de la máquina, de que el ferrocarril se encontraba cerca y de que era una imprudencia de su parte el tratar de cruzar la vía en aquellos momentos, ya que una persona cuidadosa, como lo exige la ley y la jurisprudencia, hubiese esperado hasta cerciorarse de una manera cierta y categórica, de que el tren estaba próximo a pasar o cruzar por el paso a nivel que él trataba de utilizar para pasar también en aquellos momentos."

"Además, se ha demostrado también por la prueba que el chófer que conducía el automóvil en cuestión, conocía perfectamente bien la carretera de Humacao a la Playa, y a más que le constaba que en aquel sitio no existían barreras ni cadenas para la protección de los transeúntes así como también que no había persona o guarda barrera encargada de dar aviso a los viandantes de la proximidad del tren."

Uno de los testigos de la corporación demandada declara que hay veces que está una máquina cerca y con el viento no se oye, y que en una noche serena se puede oír. Según la prueba de la propia demandada la máquina desarrollaba velocidad al cruzar la carretera y venía, usando las mismas palabras de uno de sus testigos, "a un paso bastante agigantado". La negligencia que la corte inferior atribuye al demandante se basa en la situación de la vía, el silencio de la noche y el ruido que hace un tren que arrastra treinta vagones. La corte inferior duda grandemente de que el demandante, si en verdad paró su automóvil, miró y trató de oír, no oyera el tren que se aproximaba, que tan cerca de él estaba, aun suponiendo que la locomotora no avisara por medio del pito y de la campana. Esta duda la resuelve la corte *a quo* en contra del demandante sin resolver el conflicto de la prueba sobre si se tocó o no pito y campana, indudable-

mente porque lo creyó innecesario, ya que dicha corte afirma que encuentra inexplicable que el accidente ocurriera sin la negligencia contribuyente del demandante.

Sin embargo, habiendo sido probado que la máquina caminaba a ''un paso bastante agigantado'', al subir la pendiente, es posible que el pito de la locomotora, el sonido de la campana y la llegada del tren al cruce de la carretera se hayan sucedido con tan cortos intervalos de tiempo que el demandante, aun tomando precauciones, no hubiera podido evitar el accidente. Nos parece que se apura mucho el argumento para establecer deducciones que pueden estar equivocadas. Nosotros creemos que no se ha probado en este caso la negligencia que se atribuye al demandante como una causa próxima del accidente.

Sobre los daños y perjuicios declaran los testigos del demandante. Pedro Vasallo dice que el automóvil valía $600 y que quedó inservible, no valiendo más de $50. El demandante dice que su automóvil era un carrito nuevo que no lo había querido dar en $600. Manifiesta además que recibió golpes en la cara, las manos y las rodillas; que en la rodilla izquierda recibió un golpe muy fuerte; que fué asistido por el Dr. Peña y que estuvo en cama de diez a doce días. Añade que dedicaba su automóvil al servicio público y que se ganaba de cuatro a cinco dólares diarios, y que desde que perdió su automóvil ha tenido que dedicarse a trabajar alquilado, no ganando lo mismo que antes cuando tenía su vehículo.

El Dr. Peña declara que asistió al demandante, quien presentaba lesiones en la rodilla, en la cara y en las palmas de las manos, que la asistencia médica duró desde el 23 de febrero continuamente hasta el 4 de marzo de 1927, y que después siguió asistiendo al paciente en su casa; que el demandante presentaba una inflamación de tal naturaleza que le retuvo en cama, teniendo derrame sinovial y en la rodilla derecha un edema enorme.

Teniendo en cuenta las lesiones recibidas por el deman-

dante y los daños ocasionados al automóvil, que se aprecian en $500, entendemos que *debe revocarse la sentencia apelada y dictarse sentencia condenando a la corporación demandada a satisfacer al demandante la cantidad de $700 con costas.*

El artículo 1803 del Código Civil es la fuente principal de nuestra jurisprudencia en lo relativo a negligencia. *Orta* v. *P. R. Ry. Light & Power Co.,* 36 D.P.R. 743; *Carbou Rodríguez* v. *Mir,* 36 D.P.R. 809. En nuestro desarrollo de la obligación cuasi contractual definida en ese artículo hemos aceptado la aplicación de la doctrina americana de negligencia contribuyente por parte del demandante, que de ser probada destruiría la acción. Esto ha sido reseñado recientemente por esta corte en el caso de *Miranda* v. *P. R. Ry. Light & Power Co.,* 42 D.P.R. 719. Desde luego, cuando uno aplica la doctrina de última oportunidad para evitar el daño debe preexistir tanto negligencia como negligencia contribuyente. La opinión de la Corte de Distrito de Humacao me convence de que ella estaba siguiendo la jurisprudencia de este Tribunal que aplica la doctrina de negligencia contribuyente.

La corte llegó a la conclusión de que la demandada había sido negligente de conformidad con el caso de *Domínguez* v. *P. R. Ry. Light & Power Co.,* 19 D.P.R. 1096, al no tener establecidas barreras, cadenas o un guardia en el cruce del ferrocarril. Entonces la corte procedió a examinar la conducta del demandante. El juez asumió lo que hemos considerado como una regla fija, es decir, que como el demandante conocía el camino y sabía que podía surgir un tren en cualquier momento, él estaba obligado a detenerse, mirar y oír. El demandante no pone en duda su obligación de hacerlo así; en realidad insiste en que se detuvo, miró y trató de oír, pero que nada oyó ni vió. Teniendo en mente este deber la Corte de Distrito de Humacao llegó a la conclusión de que el demandante había sido culpable de negligencia contribuyente.

La corte no lo expresó así exactamente en estas palabras y en verdad no hizo en absoluto mención de las palabras "negligencia contribuyente", pero hizo lo que era la prueba más fuerte de haber llegado a tal conclusión; dictó sentencia en favor de la demandada no obstante el hecho de haber llegado a la conclusión de que ésta había sido negligente. Tal sentencia envolvía necesariamente el hecho de que el demandante había sido culpable de negligencia contribuyente.

Aunque una corte esté obligada a hacer sus conclusiones o a escribir una opinión comprensiva de los hechos, si en dicha opinión o conclusiones de hecho la corte deja de hacer determinada manifestación que quizá debió haberse hecho, cualquier cosa que aparezca en los autos, especialmente en la prueba, que justifique la sentencia de la corte debe ser aplicada en favor de la sentencia. *Breece* v. *Brooks,* 97 Cal. 72, 31 Pac. 742, 22 L.R.A. 256; *Perkins* v. *West Coast Lumber Co.,* 129 Cal. 427; *Paine* v. *San Bernardino Valley S. Co.,* 143 Cal. 644, 77 Pac. 659; *Nevills* v. *Moore Mining Co.,* 135 Cal. 561, 67 Pac. 1054; 4 C. J. 778. Toda intención está a favor de la sentencia dictada por una corte de récord hasta que lo contrario aparezca claramente. *Stoddard* v. *Fox,* 15 Idaho 704, 99 Pac. 122; 4 C. J. 76, Sec. 2739 *et seq.; Municipio de Caguas* v. *West India Oil Co.,* decidido junio 24, 1932, ante, p. 697. Empero, la corte, en mi opinión, llegó a todas las conclusiones específicas que eran necesarias. Es cierto que lo hizo en forma alternativa, pero no obstante eran conclusiones completas. Si un juez tiene dudas respecto a determinado hecho, o sea, a si un demandante se detuvo o no, pero ya se detuviera o no, fué culpable de negligencia contribuyente, no se exige que la corte haga una determinación especial. Una corte, al apreciar la prueba, tiene ciertas reglas que le sirven de guía. Si un demandante deja de probar su caso debe dictarse sentencia en favor del demandado. Si el demandante presenta un caso prima facie y la parte demandada ofrece prueba que está en conflicto con la presentada

por el demandante, la corte está obligada a resolver el conflicto, aunque arrojando el peso de la prueba sobre el demandante. Cuando un demandado se funda en la doctrina de negligencia contribuyente, a él incumbe el peso de probar tal negligencia contribuyente, según la ley ha sido enunciada por nosotros. Se admite en este caso que el demandante estaba obligado a detenerse, mirar y tratar de oír. La corte dijo, o en efecto dijo, que o el demandante no se detuvo, miró y trató de oír, o que si se detuvo, miró y trató de oír, estaba obligado a haber oído o visto el tren que se acercaba. La corte se expresó así:

"Si aceptamos la teoría de la demandada, de que sus empleados tocaron el pito y la campana al acercarse al cruce, es claro y evidente que el demandante fué negligente al tratar de cruzar el paso a nivel, teniendo aviso de que el tren se aproximaba; si por el contrario asumiéramos que el demandante paró su carro, miró y trató de oír, nos parece inexplicable cómo durante el silencio de la noche, dada la situación de la vía en relación con la carretera y la proximidad del tren, él y su compañero no se dieran cuenta, por el ruido de la máquina, de que el ferrocarril se encontraba cerca y de que era una imprudencia de su parte el tratar de cruzar la vía en aquellos momentos, ya que una persona cuidadosa, como lo exige la ley y la jurisprudencia, hubiese esperado hasta cerciorarse de una manera cierta y categórica, de que el tren estaba próximo a pasar o cruzar por el paso a nivel que él trataba de utilizar también en aquellos momentos."

La corte necesariamente quiso decir que si el demandante en realidad se detuvo, y no vió u oyó el tren, ello se debió a que en realidad no hacía uso de sus facultades y que por tanto fué negligente. La alternativa adoptada por la corte fué una forma de silogismo conocida en los libros de lógica como un dilema. Cuando un razonante se funda en un dilema para llegar a determinada conclusión de negligencia, no tiene que especificar a qué proposición disyuntiva del dilema se acoge, toda vez que en uno u otro caso emana la conclusión. Otras cortes han llegado a conclusiones similares mediante los mismos procesos de razonamiento.

En el caso de *Almodóvar v. Acosta Calderón,* 43 D.P.R. 200, la corte de Distrito de San Juan hizo uso de un razonamiento alternativo en favor del demandante, y esta corte resolvió que era innecesario que la corte inferior hiciera una conclusión más específica. Si podía usarse este razonamiento en favor de un demandante, debe aplicarse de igual modo en favor de un demandado, especialmente cuando en uno u otro caso la cuestión envuelta era una de negligencia de la parte envuelta.

De la lectura que yo mismo he hecho de la prueba debo llegar a la conclusión de que el demandante no se detuvo porque me parece que era imposible que si él se hubiese detenido el accidente hubiera ocurrido.