PEDRO MARÍA ALVAREZ LUGO, demandante y apelante, *v.* EL MUNICIPIO DE AÑASCO, demandado y apelado.

No. 5519.—*Sometido:* Junio 26, 1931. *Resuelto:* Mayo 25, 1932.

*Horton & Saliva,* abogados del apelante; *M. Figueroa del Rosario,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Pedro María Alvarez Lugo demandó al municipio de Añasco en solicitud de sentencia ordenándole el levantamiento del acueducto que tenía sobre una finca de su propiedad o el pago, en concepto de daños y perjuicios, de la suma de cinco mil dólares, con más las costas y honorarios de abogado en caso de oposición.

Para basar su reclamación alegó en síntesis que era dueño de una finca de 170.54 cuerdas de terreno situada en el barrio de Humatas del término municipal de Añasco que adquirió por compra en pública subasta en pleito que siguiera contra los herederos desconocidos de José R. Alvarez, en 1927, encontrándose inscrito su título en el Registro de la Propiedad de Mayagüez; que según su información y creencia el municipio de Añasco allá por el año 1922 instaló en la dicha finca un acueducto, situando su presa al este de la finca ocupando parte de sus terrenos y atravesándolos con su tubería en una extensión de novecientos metros, bajo tierra unas veces y a flor de suelo otras; que dicho acueducto fué construído por el municipio sin título ni derecho alguno, no estando inscrita la servidumbre en el registro de la propiedad; que a virtud de la construcción—uso de tierras e inundación de terrenos—la finca que valía doce mil dólares vale sólo siete mil, y que al comprar la finca ignoraba la existencia del acueducto.

Contestó el demandado, en resumen, aceptando que desde 1923 construyó y viene operando un acueducto para surtir de agua al pueblo, estando su presa situada en un punto contiguo a la finca del demandante y cruzando parte de su tubería por terrenos de dicha finca, y negando que careciera de título pues llevó a efecto la construcción a virtud de franquicia que le otorgara la Comisión de Servicio Público en 1923, no teniendo que recurrir a la expropiación para pasar la tubería por la finca de que se trata porque su anterior

dueño José Reyes Alvarez, hermano del demandante, que la poseyó hasta poco antes de adquirirla éste, lo autorizó para ello sin exigirle indemnización alguna, constándole tal hecho al demandante, y así cuando el demandante adquirió la finca hacía más de cuatro años que pesaba sobre ella la servidumbre indicada.

Contiene la contestación otras negativas sobre uso de terrenos, inundaciones, depreciación, etc., e invoca el carácter aparente de la servidumbre que se niega.

Fué el pleito a juicio y la corte lo resolvió por sentencia adversa al demandante y éste apeló, sosteniendo en su alegato que la corte erró, 1, al declarar que el demandado tiene un título que le da derecho a la servidumbre; 2, al resolver que ese título no tenía que constar en escritura pública y era valedero contra el demandante que es un tercero.; 3, al decir que era fatal para el demandante el que la servidumbre fuera aparente; 4, al apreciar la prueba sobre la inundación; 5, al admitir como prueba cierto documento; 6, al juzgar que la prueba era bastante para crear la servidumbre; y 7, al considerar que la contestación era suficiente.

A virtud del examen que hemos hecho de los autos diremos en primer término que la contestación es suficiente. El defecto que tiene es el de ser innecesariamente extensa y ello no es motivo de revocación. Quizá sea conveniente decir también desde el principio que estamos enteramente conformes con la corte sentenciadora en que no se probaron los daños. Alegó el demandante que la finca valía doce mil dólares y que ahora a virtud de la depreciación sufrida a causa del acueducto vale siete mil, y declaró él mismo en el juicio que la adquirió por menos de lo que vale en la actualidad. Despejada así la situación, estudiaremos la verdadera cuestión fundamental envuelta en el litigio.

■ ■ Para probar su título a la servidumbre, el demandado presentó copia de la franquicia para la construcción del acueducto y un escrito que le dirigieran los vecinos Ramón

Vélez y José Reyes Alvarez, dueños de fincas por donde había de pasar el acueducto, expresándole que como para la colocación de la tubería se haría necesario la destrucción de árboles y plantíos de difícil justiprecio, estaban dispuestos a contribuir cediendo la porción de sus terrenos que fuera necesario, siempre que el Municipio les concediera agua para el consumo de sus respectivas casas. Uno de dichos vecinos era el dueño de la finca de que se trata en el pleito. El resto de la prueba sobre ese extremo, se resume debidamente por la corte sentenciadora en su relación del caso y opinión, así:

". . . y el testigo José R. Vélez, otro de los terratenientes que cedió propiedad suya para el paso de la tubería, reconoció un escrito firmado por él y por José R. Alvarez, el anterior dueño de la finca, cediendo los terrenos necesarios a cambio de un servicio de agua gratis, y declaró que esto les fué concedido. Este documento fué también identificado por Ramón Calderón, Secretario Municipal. Se presentó también copia del acuerdo del Consejo de Administración aceptando el convenio. Y cerró su caso el demandado con la declaración de Antonio González Suárez, quien a la fecha de la construcción del acueducto y hasta tiempo después ocupó el cargo de Comisionado de Servicio Público (Alcalde), quien hizo historia de todas las gestiones que practicó en representación del Municipo en relación con el acueducto con todos los terratenientes afectados, especialmente con el Sr. José R. Alvarez, anterior dueño de la dicha finca, afirmando que dicho señor accedió y consintió a todo lo que se hizo, trabajó en las obras y luego continuó en el acueducto empleado con el municipio, y cedió los terrenos gratuitamente."

La admisión del documento firmado por los vecinos Vélez y Alvarez se objetó y es motivo del quinto señalamiento de error, porque no aparecía sobre qué finca se autorizaba la construcción. No describe la finca en verdad, pero proporciona un dato que unido a otros tiende a probar el título del demandado. No hubo error en su admisión.

Se impugna el contrato propuesto por los vecinos y celebrado finalmente, porque la franquicia prohibía la concesión de agua gratis, por parte del Municipio. No obstante lo que se dijera, la concesión no fué gratis en realidad de verdad.

¡Como que se otorgaba a cambio de obtener lo que el demandante valora en cinco mil dólares!

Apreciada la prueba en conjunto todo lo que demuestra, pues, es que a cambio de agua del acueducto para su casa, el dueño de la finca consintió la construcción en ella de la parte del acueducto que fuere necesaria y que la construcción se realizó desde 1923 y subsiste, habiendo trabajado el propio dueño de la finca en las obras y continuado luego como empleado del municipio en el acueducto. No hubo escritura pública, ni menos se inscribió la servidumbre en el registro.

Bajo esas circunstancias ¿pudo concluirse, como concluyó la corte sentenciadora, que se demostró la existencia de un título válido en derecho? Creemos que sí.

Las servidumbres continuas y aparentes, como la de acueducto, se adquieren, según el artículo 473 del Código Civil, ed. de 1930, en virtud de título, o por la prescripción de veinte años.

Comentando Manresa el artículo 537 del antiguo Código Civil, igual al 473 del actual, ed. de 1930, dice:

"Con la palabra *título* se refiere el Código al acto jurídico que da nacimiento a la servidumbre, no al documento en que ese acto se habrá hecho constar. Contrapuesta la idea de título a la de prescripción, la primera indica la voluntad expresa, individual o colectiva, y la segunda la voluntad presunta.

"En tal sentido, el título equivale a modo de adquirir y comprende todos los que se determinan en el art. 609 del Código, exceptuando la *prescripción,* que en el art. 537 comprende un grupo aparte, y la *sucesión intestada* que no encierra acto alguno de expresión de la voluntad, pues en virtud de ella, y prescindiendo de las operaciones particionales y convenios que en éstas puedan establecerse después, se transmiten los derechos que ya existen, mas no se constituyen otros nuevos.

"Son, pues, *títulos* constitutivos de las servidumbres, cualquiera que sea su clase, la ley, la donación, el contrato y el testamento.

"Suscítase la cuestión de si el título deberá estar consignado en un documento público. En nuestra opinión, ha de atenderse a la naturaleza del título.

"No es dudoso que el testamento y la donación de inmuebles o

derechos reales sobre los mismos, requieren formalidades especiales. Respecto al primero, hasta el testamento ológrafo y el que se hace en peligro de muerte o en tiempo de epidemia, han de ser elevados a documento público (arts. 689 y 703). Respecto a la donación, exige el art. 633 para su validez la escritura pública. ¿Podrá decirse lo mismo respecto a los contratos? Creemos que los arts. 1278 y 1279, unidos a los 1254, 1258 y 1225, están bien explícitos. La convención es válida, por regla general, en cualquier forma que se celebre; si después de ser *válida* la convención por mediar el consentimiento y los requisitos *esenciales*, se exige en algún caso escritura pública, los contratantes podrán compelerse recíprocamente a llenar esa *forma*. Y no se diga que se trata de algo más que de una simple obligación, que se constituye un derecho real porque el art. 1095, como el 609, dan por nacido el derecho real desde que media la tradición, y el artículo 1464 supone que hay tradición en los bienes incorporales por el solo *uso* que haga de su derecho el adquirente consintiéndolo el transmitente.

"Dice el art. 1280 del Código, que deberán constar en documento público: '1º Los actos y contratos que tengan por objeto la creación, transmisión, modificación o extinción de derechos reales sobre bienes inmuebles.' ¿Quiere decir que no son *válidos* esos contratos en otra forma? ¿Que no obligan a las partes contratantes y a sus herederos? Creemos que no es ése el alcance de la disposición." 4 Manresa, Comentarios al Código Civil, 594, segunda edición corregida.

■ Pero se sostiene que si bien eso sería así en cuanto a las partes contratantes, no lo es en cuanto al demandante que ostenta la condición de tercero. Examinamos las circunstancias que concurren y la ley y la jurisprudencia aplicables.

En primer lugar la Corte de Distrito concluyó, a virtud de la prueba practicada por el demandado, que el demandante tenía conocimiento de la existencia de la servidumbre antes de adquirir la finca ya que se demostró que el demandante fué por tres años Concejal del Municipio, era hermano del anterior dueño de la finca y mantuvo con él relaciones de negocios, y residió siempre en el término municipal de Añasco, y en tal caso de acuerdo con la repetida jurisprudencia de la Corte Suprema de España y de esta Corte Suprema de Puerto Rico, el nuevo adquirente no es un tercero.

Pero el apelante insiste en que esa prueba no es suficiente para demostrar el conocimiento actual del demandante y quizá tenga razón. Aun así, partiendo de la base de lo demostrado como meras circunstancias concurrentes, tratándose como se trata de una servidumbre continua y aparente, el conocimiento se presume y el título de adquisición no obstante no encontrarse inscrito en el registro, es válido contra el demandante.

En el caso de *Pagán Rosell* v. *Sucesión Rivera Vélez*, 38 D.P.R. 649, 652, dijo esta Corte, por medio de su Juez Asociado Sr. Texidor:

"La servidumbre de que se habla, por lo que de las alegaciones resulta, es una servidumbre aparente, como lo es en la mayoría de los casos la de acueducto; el demandante la observó cuando fué a voltear la finca, en época que se ignora, porque del récord no apa-rece la fecha de la demanda ni la de su presentación, a las que se alude en la alegación en que se dice cuándo vió el demandante los signos de servidumbre; pero sí que volteó la finca después de la compra. Siendo la servidumbre aparente, esta misma calidad le da el carácter de publicidad necesario para que su inscripción no sea absolutamente indispensable, ya que es conocida por razón de su misma apariencia. Véanse a este propósito, las Sentencias del Tribunal Supremo de España de 11 de enero de 1895, 23 de marzo de 1906, y 5 de abril de 1898. La doctrina legal de esas sentencias, y otras que cita el comentarista Sr. Morell, al tratar en el tomo segundo de su obra sobre legislación hipotecaria, del artículo 23 de la Ley Hipotecaria de España, es que no tiene la calidad de tercero el que adquiere bienes legítimamente gravados con una servidumbre respecto de cuya existencia, por revelarse por signos ostensibles e indubitados, no puede dudarse, aunque tal servidumbre no estuviera inscrita en el registro."

Aunque en ese caso la acción no se ejercitó contra el Municipio, sino contra el vendedor de la finca, los principios que sirvieron para resolverlo son enteramente aplicables al presente. También parece oportuno citar la decisión de esta Corte en el caso de *La Iglesia Católica* v. *La Combate Tobacco Corporation*, 42 D.P.R. 376.

Con respecto a la jurisprudencia del Tribunal Supremo

de España, nos limitaremos a transcribir uno de los *considerandos* de la de 5 de abril de 1898, 84 J. C. 6, 12. Dice:

"Considerando que, conforme a la reiterada jurisprudencia de este Tribunal Supremo, carece de la calidad de tercero, para los efectos determinados en los artículos 2, 13, 23 y 27 de la Ley Hipotecaria, invocados en el motivo segundo del recurso, el que adquiere bienes gravados legítimamente con cualquiera servidumbre, respecto de cuya existencia, por revelarse mediante signos ostensibles e indubitados, no pueda dudarse, aunque la tal servidumbre no estuviera especialmente inscrita en el Registro, porque en tal caso, y siendo manifiesto y no oculto el gravamen, falta por entero la razón en que tales preceptos legales se fundan."

Por virtud de todo lo expuesto, no habiéndose cometido ninguno de los errores que señala la parte apelante, *debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*

El Juez Asociado Señor Wolf disintió.* El Juez Asociado Señor Córdova Dávila no intervino.