Castor Colón, demandante y apelante, *v.* Plazuela Sugar Company, demandada y apelada.

No. 6154.—*Sometido:* Mayo 19, 1933. *Resuelto:* Enero 16, 1935.

872

*L. Mercader,* abogado del apelante; *G. Zeno Sama,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Allá por el año de 1931, Castor Colón demandó a Plazuela Sugar Company, alegando que cierta finca del demandante está atravesada por un ferrocarril de la demandada y solicitando que se declare su propiedad libre de servidumbre de paso y que se ordene a la demandada que levante los rieles que tiene en la referida finca. De acuerdo con las alegaciones y la prueba, Pascasia Serrano, dueña en 1907 de una finca de nueve cuerdas de terreno radicada en el barrio Islote, del término municipal de Arecibo, concedió permiso verbal a Plazuela Sugar Company para construir y explotar una vía férrea a través de la referida finca. Al año siguiente ese permiso se hizo constar por ambas partes en un documento privado otorgado ante testigos. En ese documento la dueña aparece ratificando mediante el precio de $25 el permiso verbal concedido. Años después, en 1913, ambas partes otorgaron un documento público ante notario donde se hace constar que Plazuela Sugar Company es dueña de un ferrocarril privado que atraviesa con sus vías férreas una parcela

de la finca de Pascasia Serrano que se describe, dando a dicha finca un aumento de valor considerable, por cuyo motivo y por el precio de $1 que confiesa haber recibido, la dueña del inmueble concede a Plazuela Sugar Company una servidumbre de paso y establecimiento de una vía férrea fija a perpetuidad sobre dicha porción de la finca que también se describe. Se hace constar además que Pascasia Serrano da, cede y traspasa a favor de Plazuela Sugar Company la referida parcela de terreno con derecho por dicha corporación al uso de la misma a perpetuidad para establecer, fijar y empotrar una línea férrea y mantenerla y explotarla con el material rodante necesario y con fuerza animal o mecánica de cualquier clase. Cinco años después, en 1918, vendió Pascasia Serrano a Arturo González Prado una cuerda de terreno de la mencionada finca por el precio de $250 que confesó haber recibido, haciéndose constar en la escritura que esa parcela está atravesada de este a oeste por una vía férrea de la Plazuela Sugar Company, hecho que también hizo constar el registrador en sus libros al hacer la inscripción de esa finca de una cuerda a favor de González · Prado. Posteriormente Plazuela Sugar Company presentó en el registro para su inscripción la escritura que en 1913 otorgara a su favor Pascasia Serrano, pero el registrador negó la inscripción del documento, limitándose a tomar anotación preventiva, por no describirse el predio dominante a cuyo favor se constituye la servidumbre y porque, habiéndose segregado de la finca principal con posterioridad al otorgamiento del documento una parcela inscrita a favor de diferente persona, no podía determinarse si la faja constitutiva de la servidumbre está en el resto de la finca o de la parcela. Contra esta negativa no interpuso Plazuela Sugar Company recurso alguno ni consta que el documento aludido haya sido inscrito posteriormente en el registro de la propiedad. En 1927 la finca de González Prado fué vendida por el Colector de Rentas para cubrir las contribuciones que adeudaba, siendo comprada por Esteban Mena Díaz, quien también permitió

que la finca fuese vendida en cobro de contribuciones por el Colector de Rentas Internas a Castor Colón, quien inscribió su título en mayo de 1931 en el registro de la propiedad.

La corte inferior declaró sin lugar la demanda. De esta sentencia apeló el demandante, atribuyendo a la corte inferior varios errores, que examinaremos por el mismo orden en que han sido presentados.

■ Se alega en primer término que el tribunal *a quo* incurrió en error al no dictar sentencia contra la demandada de acuerdo con las alegaciones presentadas bajo juramento. Al iniciarse el juicio solicitó el demandante que la corte dictase sentencia a su favor por los méritos de la demanda y de la contestación, que están juradas. . La solicitud fué denegada, procediéndose entonces a la práctica de la prueba. Debe desestimarse el error apuntado de acuerdo con la doctrina establecida en *Ana María Sugar Co.* v. *Castro,* 28 D.P.R. 261, y *Rivera* v. *Central Pasto Viejo,* 43 D.P.R. 715.

■ Alega el apelante que la corte inferior cometió error al admitir como prueba cuatro documentos que se describen en los motivos de error segundo, tercero, cuarto y quinto. Esta prueba se relaciona directamente con la servidumbre alegada por la parte demandada y es claramente admisible como quedará demostrado en el curso de esta opinión.

■ Los motivos de error sexto y séptimo se basan en haber resuelto el tribunal *a quo* que el registrador de la propiedad no debió negarse a inscribir la escritura otorgada en 1913 a favor de Plazuela Sugar Company. A juicio de la corte inferior el documento mencionado debió haber sido inscrito por tratarse de una cesión, de una transferencia de la parcela de terreno, y no de una constitución de servidumbre real. El error o el acierto del registrador al denegar la inscripción solicitada no es cuestión a debatir en el presente caso, porque en nada puede afectar la resolución que se dicte en definitiva. Las conclusiones de la corte inferior sobre este extremo carecen, por lo tanto, de importancia, ya que están fuera de lugar y que, como hemos dicho, no pueden

influir en la confirmación o revocación de la sentencia apelada.

Se alega que la corte inferior erró al decidir que la anotación preventiva extendida por el registrador con motivo de la presentación de la mencionada escritura afectaba, a pesar de su caducidad, los derechos del actor, y que era y es un tercero de buena fe. Este tribunal ha declarado que las anotaciones preventivas tienen carácter transitorio y caducan por el transcurso del término de ciento veinte días que fija la ley para subsanar los defectos que impiden la inscripción del título y que una vez caducadas sin que se hayan subsanado tales defectos no producen efecto alguno contra terceros y carecen de fuerza para destruir derechos civiles de otra persona, siendo el deber del registrador cancelar de oficio dichas anotaciones. *Ramis et al.* v. *Registrador,* 18 D.P.R. 76; *Antonsanti* v. *Registrador,* 9 D.P.R. 190.

En este caso el demandante tuvo conocimiento, no ya por la anotación preventiva, sino por el título de González Prado inscrito en el registro, de que el inmueble que compró estaba atravesado de este a oeste por una vía férrea de Plazuela Sugar Company. En cuanto a la anotación, dado su carácter transitorio, no constituye *constructive notice* de la información en ella contenida después de transcurrido el plazo señalado por la ley. El derecho americano distingue claramente el efecto de una notificación de derecho (*constructive notice*) y una notificación de hecho (*actual notice*). Cuando se adquiere *actual notice* no es posible alegar la condición de tercero. Supongamos que una persona adquiere conocimiento personal de la existencia de ciertos hechos en una fuente de información cualquiera, ¿podría borrarse de su imaginación la realidad viviente de esos hechos para permitirle alegar con éxito favorable la condición de tercero? ¿Son tan inflexibles las pautas que ofrece la Ley Hipotecaria para apreciar si un contratante reúne o no el carácter de tercero que pueda llegarse al extremo de prescindir de la

realidad para crear la ficción de la ignorancia allí donde los hechos, penetrando por los sentidos, se manifiestan palpablemente con la necesaria claridad? Indudablemente que no. Como dijimos en *Arroyo* v. *Zavala,* 40 D.P.R. 272, la ley no vive en un medio ambiente ficticio sino en un conjunto de realidades. No basta por sí solo el elemento filosófico, el principio ético jurídico, para dar vida a la ley; ésta necesita, como necesita el cuerpo humano del aire para respirar, de los elementos históricos y circunstanciales.

El demandante puede alegar que no ha recibido, por medio de la anotación preventiva, *constructive notice* de la existencia o de la probable existencia de un título válido de servidumbre; pero está incapacitado para negar que ese mismo registro con el cual pretende escudarse le hizo saber, por medio del título inscrito a favor del Sr. González Prado, que la parcela por él comprada estaba atravesada por una vía férrea de Plazuela Sugar Company.

Arguye la demandada que tanto por el registro como por la materialidad de las vías tendidas sobre la parcela de referencia, cuya visualidad hiere forzosamente los sentidos, tenía que conocerse el gravamen de servidumbre a favor de Plazuela Sugar Company. El tratadista Morell, comentando el artículo 27 de la Ley Hipotecaria, cita veinte sentencias del Tribunal Supremo de España, cuya doctrina a su juicio puede condensarse así:

"No puede alegar su cualidad de tercero hipotecario, aquél que tiene perfecto conocimiento de las condiciones con que hubo de verificarse la adquisición, aun cuando éstas no consten en el Registro, ya ese conocimiento se derive de actos realizados por el supuesto tercero, ya de hechos que tienen que herir forzosamente los sentidos, cual acontece, por ejemplo, respecto a determinadas servidumbres aparentes, si bien no deben admitirse presunciones más o menos lógicas o racionales, contradictorias en realidad del esencial fundamento y alcance de los preceptos de la Ley Hipotecaria, ni cabe obligar tampoco a los interesados a que hagan un estudio jurídico de las condiciones de los bienes o derechos inscritos." 2 Morell, 533-534.

Criticando el criterio sostenido por el alto tribunal español, dice el eminente comentarista:

"El Tribunal Supremo establece, por lo tanto, una nueva distinción entre los terceros, derivada del conocimiento probado o del conocimiento presunto de los actos o de los derechos inscribibles, para establecer en definitiva que títulos no inscritos pueden perjudicar a otros aunque estén registrados, si aquél que los inscribió tenía o debía tener conocimiento de ellos. El que adquiere un derecho puede, pues, hacérselo saber por acta notarial u otro medio, a los que por él deban o puedan ser perjudicados y así no necesita inscribir y quita la consideración de tercero al que lo es legalmente.

"    *         *         *         *         *         *         *

"Alabamos la tendencia moral que esa doctrina revela, el respeto que en ella se concede a la buena fe; pero estamos convencidos de que no es eso lo que el art. 27 de la ley dice, ni lo que los legisladores quisieron establecer. No se le ha ocurrido al Tribunal Supremo, que aun en nuestra ley no siempre se tiende al principio de publicidad por sí solo, y que muy otra es la doctrina y tendencia que revelan los arts. 17, 23, 34, 36, 24 y 41 de la ley, y los 606 y 1473 del Código Civil." 2 Morell, 534.

En la página 667, dice el mismo comentarista:

"La doctrina del Tribunal Supremo tiene alguna base, y es lógica en el concepto que le merece la palabra tercero, no con arreglo a la letra del art. 27, sino a la razón legal que se le atribuye. Cierto es que un signo aparente de servidumbre, es claro y visible, y que el uso de ella aparenta que existe. Pero esto no quiere decir que la servidumbre aparente haya de entenderse siempre tal servidumbre como legalmente constituída, porque no basta su apariencia, puede fundarse en una mera tolerancia, y puede, por tanto, desconocerse y evitarse si no se apoya en base legal alguna."

El criterio sostenido por el Tribunal Supremo de España nos parece justo y razonable, porque se ajusta a las realidades de la vida e interpreta con cierta flexibilidad los preceptos de la Ley Hipotecaria sin quebrantar los principios en que la misma se inspira. Estamos de acuerdo con el Sr. Morell en que un signo aparente de servidumbre no siempre significa que la servidumbre ha quedado legalmente constituída, puesto que puede fundarse en una mera tolerancia;

pero entendemos que ese signo aparente es bastante para poner sobre aviso a todo el que trate de llevar a cabo alguna negociación con el supuesto predio sirviente para que actúe con cautela y procure cerciorarse de la verdad. La investigación es muy sencilla y fácil, porque aun en caso de que el dueño del predio sirviente ocultase la información, no la ocultaría el dueño del predio dominante, quien, por otra parte, estaría impedido de volver sobre sus propios actos si se negase a descubrir la verdad.

Esta Corte Suprema, en el caso de *Arroyo* v. *Zavala,* supra, se expresó así:

"En primer término conviene examinar el concepto de tercero. Y desde luego, establecer la diferencia que hay entre el tercero civil, con arreglo al Derecho general, y el tercero puramente hipotecario cuya esfera de actividad se encierra en el registro de la Propiedad.

"El Tribunal Supremo de España en buen número de decisiones ha declarado que aquél que conoce la existencia de un gravamen, o la situación jurídica de un inmueble, no es en realidad un tercero, en cuanto a ese gravamen o a esa situación. La ley no vive en un medio ambiente ficticio, sino en un conjunto de realidades. No basta, por sí solo, el elemento filosófico, el principio ético jurídico, para dar vida a la ley; ésta necesita, como necesita el cuerpo humano del aire para respirar, de los elementos históricos y circunstanciales. Por esa razón, el Tribunal Supremo de España en esas sentencias de que hablamos, ha puesto la mirada en las realidades de la vida; y si una persona ha venido percibiendo con sus sentidos los signos evidentes de una servidumbre, no puede, por una ficción legal, ser un tercero con respecto a ese gravamen. Aparte de ese punto de vista, muestran esas decisiones la íntima relación entre el Derecho Civil, y su rama la Ley Hipotecaria, pese a los que pretenden independizar ésta de aquél. Con relación al Derecho Civil, la Ley Hipotecaria es un menor que nunca alcanzará la mayoría de edad."

Véanse también *Pagán* v. *Sucn. Rivera Vélez,* 38 D.P.R. 649; *Iglesia Católica etc.* v. *Combate Tobacco Corp.,* 42 D.P.R. 376; y *Alvarez* v. *Municipio,* 43 D.P.R. 521.

No hay duda de que los rieles tendidos sobre la propiedad en forma de vía están indicando ostensiblemente el paso por la misma de locomotoras. ¿Constituyen estos rieles un signo

aparente de la probable existencia de una servidumbre? Opinamos que sí. Descartando la prescripción y los elementos que intervienen para darle vida, sobre lo cual no queremos adelantar juicio alguno, esos rieles únicamente podrían estar allí por el consentimiento o la mera tolerancia del dueño del predio sirviente o en virtud de título. Ahora bien, si éstos son los hechos, si ésta es la realidad palpable para todo el que tenga el propósito de adquirir el inmueble, ¿no parece natural y razonable que procure cerciorarse de la verdad antes de cerrar la negociación?

La jurisprudencia americana sostiene que el comprador de un inmueble que está sujeto a servidumbre tiene conocimiento de la misma siempre que sea aparente mediante una inspección ordinaria de la propiedad. Y considera que es sana la regla que sostiene que los signos visibles indicando la servidumbre o el conocimiento real de algún hecho que indique su existencia generalmente pone al comprador sobre aviso para que trate de inquirir, debiendo considerarse que si no inquiere, la investigación, en caso de haberse llevado a cabo, hubiese descubierto la verdad. Notas, 41 A.L.R. 1442, 74 A.L.R. 1250.

En *McCann* v. *Day*, 57 Ill. 101, se sostiene que cuando una persona adquiere mediante título una servidumbre de paso, estando el camino cercado y en constante uso para los propósitos del paso, estos hechos constituyen noticia a los compradores posteriores, aun cuando el documento no haya sido registrado.

En *Kamer* v. *Bryant*, 46 S. W. 14, resuelto por la Corte de Apelaciones de Kentucky, se sostuvo que el comprador de una parcela de terreno sobre la cual existe un desvío operado por un tercero para conducir piedra de una cantera a un ferrocarril, adquiere notificación de la servidumbre y no puede discutir su existencia. En este caso se probó que cuando fué comprada la parcela de terreno existía allí el desvío indicando su uso para el beneficio de los dueños de la cantera y que el comprador objetó a la servidumbre tres

años después, cuando fracasaron sus negociaciones para comprar dicha cantera. Como ya se ha dicho, la corte resolvió que dicho comprador tuvo conocimiento de la servidumbre al tiempo de adquirir el terreno, quedando impedido de negarla después.

En el caso de *Compañía Azucarera del Toa* v. *Galán et al.,* 28 D.P.R. 844, esta corte se expresó así:

"Nos inclinamos a convenir con la apelante en que el 'signo aparente' priva de la condición de terceros a las personas que adquieren el predio sirviente y que la existencia del camino, de estar claramente definido por razón de los hechos físicos y que puede verse por cualquier persona que inspeccione los terrenos, constituye suficiente aviso para tal comprador."

Véanse también *Ward* v. *Metropolitan Elev. R. Co.,* 152 N. Y. 39, 46 N. E. 319; y *Harman* v. *Southern R. Co.,* 72 S. C. 228, 51 S. E. 689.

El noveno motivo de error se basa en haber resuelto la corte inferior que la escritura de venta de la parcela de terreno a favor de González Prado fué simulada, sin que tal cuestión procediera ni hubiera evidencia para sostenerla ni para oír a las partes interesadas, y sin que el título del demandante se relacione con el referido contrato, ya que adquirió la finca en virtud de remate directamente del Pueblo de Puerto Rico por falta de pago de las contribuciones. No basa la corte su decisión en que el título otorgado a favor de González Prado fuese o no simulado. Penetrando en los móviles del Sr. González Prado, el tribunal inferior, después de declarar que no puede alegar la condición de tercero, dice que luego de simular la adquisición de una cuerda de terreno, en la exorbitante suma de $250, se la dejó rematar por la cantidad de $3.82, sin ejercitar acto alguno tendente a rechazar la servidumbre, fin primordial que le incitó a la compra con el señuelo de una posible y cuantiosa indemnización. Las palabras de la corte, que por otra parte no contienen una declaración solemne de nulidad, no pueden afectar

el resultado definitivo de este pleito, porque, sea válido o simulado el título del Sr. González Prado, el actual dueño de la parcela de terreno no puede ser considerado como un tercero.

En los motivos de error décimo y undécimo se dice que la corte inferior erró al resolver que Plazuela Sugar Co. debió ser notificada de la venta hecha por El Pueblo de Puerto Rico y al declarar que las palabras "libre de toda hipoteca, carga o cualquier otro gravamen" del artículo 347 del Código Político no comprenden las servidumbres. Con respecto a este último particular, la corte inferior se expresa así:

". . . entendemos que las palabras *carga* o *gravamen* tal como son usadas en esta ley, se refieren más bien a las deudas de cualquier índole que pudieran pesar sobre la finca, v. g.; hipotecas, embargos y otras de ese género, que no a cargas reales tangibles, como son las servidumbres. Las primeras son fáciles de liberar, ya que no afectando directamente al fundo, con el simple pago de las mismas quedan canceladas. Con las segundas no sucede igual, porque las servidumbres son inseparables de la finca a que activa o pasivamente pertenezcan. Art. 470 Código Civil, edición de 1930. Disponiéndose también por el artículo 471 que las servidumbres son indivisibles y si el predio sirviente se divide entre dos o más, la servidumbre no se modifica y cada uno de ellos tiene que tolerarla en la parte que le corresponda."

Las decisiones de los tribunales americanos no están conformes con respecto a la suerte que ha de correr una servidumbre cuando se vende una propiedad inmueble para el pago de contribuciones. Algunas cortes mantienen el criterio de que la servidumbre queda extinguida, mientras otras, que constituyen la mayoría, sostienen una opinión contraria. La Corte de Apelaciones de Nueva York, en el caso de *Tax Lien Co.* v. *Schultze,* 213 N. Y. 9, se expresa así:

"Cuando se impone una servidumbre sobre un predio en beneficio de otro, se reduce el valor en el mercado del predio sirviente y se aumenta el del predio dominante, prácticamente de acuerdo con el valor de la servidumbre; los respectivos predios deben, por consiguiente, ser tasados de conformidad. (Citas.)

"La tasación del solar descrito en la sentencia no incluía las servidumbres de que disfrutaba la propiedad contigua. La tasación del predio sirviente estaba sujeta a las servidumbres incluídas en las tasaciones del predio dominante. Como consecuencia lógica se ha resuelto que al ejecutarse un gravamen contributivo y al venderse la finca de conformidad con los artículos 1035 al 1039 de la franquicia de la gran urbe neoyorquina, las servidumbres particulares de luces y vistas existentes sobre los terrenos vendidos no quedan extinguidas. Si los derechos de propiedad no incluídos en una tasación son vendidos o extinguidos mediante una venta celebrada en cobro de contribuciones, ello equivaldría a privar de la propiedad sin el debido proceso de ley. Jackson v. Smith, 153 App. Div. 724, 138 N. Y. Supp. 654, confirmado en 213 N. Y. 630, 107 N. E. 1079."

Éste parece ser el criterio más acertado y el que prevalece entre los tribunales que sostienen la no extinción de la servidumbre cuando se ejecuta la finca para el pago de contribuciones. Si el inmueble es objeto de una servidumbre, es natural que la carga que pesa sobre el mismo disminuya su valor, así como también debe aumentar el valor del predio dominante que recibe el beneficio de la servidumbre.

En el caso de *Blenis* v. *Utica Knitting Co.*, 149 App. Div. 936, confirmado por la Corte de Apelaciones de Nueva York, la corte se expresó así:

"Los estatutos refiriéndose a ventas para el pago de contribuciones en el Condado de Oneida que disponen que el comprador en tales ventas obtendrá un título absoluto libre de toda carga, no pueden, en mi opinión, ir más allá que investir al comprador con el título que el dueño de la propiedad tenía, libre de *liens by the way of encumbrances placed thereon*. En otras palabras, no puede despojarse a una parte, situada como el demandante en este caso, de derechos de propiedad tales como una servidumbre legalmente adquirida con anterioridad a la imposición de la contribución bajo la cual la venta fué hecha; y esto especialmente cuando la persona dueña de la servidumbre no fué parte en el procedimiento."

Opinamos, como la corte inferior, que el título adquirido por el demandante en virtud de la venta de la propiedad realizada por El Pueblo de Puerto Rico no libera la referida propiedad de la servidumbre que sobre la misma pesa.

El último error atribuído a la corte inferior se basa en que dicho tribunal no declaró con lugar la demanda, imponiendo las costas a la demandada, y en que apreció la evidencia con error manifiesto. La demanda fué desestimada sin especial condenación de costas. En cuanto a la evidencia aportada, en su mayor parte documental, entendemos que justifica la confirmación de la sentencia apelada.

En resumen, creemos que entre Plazuela Sugar Company y Pascasia Serrano se llevó a cabo un contrato en virtud del cual se constituyó una servidumbre a favor de la parte demandada en la parcela de terreno de que hoy es dueño el demandante. Este contrato obliga a la entonces dueña del predio sirviente y a todos los adquirientes posteriores del terreno afectado por la servidumbre con el conocimiento que se revela en la prueba practicada. El hecho de que no se hubiese descrito el predio dominante cuando se elevó a escritura pública el contrato celebrado entre Pascasia Serrano y la demandada no afecta la validez del título. La prueba ha demostrado claramente que la servidumbre quedó constituída en la parcela de terreno vendida por Pascasia Serrano al Sr. González Prado, de la cual es dueño hoy el demandante.

*Debe confirmarse la sentencia apelada.*

Los Jueces Asociados Sres. Wolf y Aldrey disintieron.*

### VOTO DISIDENTE DEL JUEZ ASOCIADO SR. ALDREY

Castor Colón presentó demanda en la Corte de Distrito de Arecibo en 1931 contra la corporación privada Plazuela Sugar Company para que el tribunal declarase que cierta finca del demandante, que está atravesada por un ferrocarril de la demandada, está libre de servidumbre de paso de esa vía y que, en consecuencia, ordene a la demandada que levante los rieles que tiene en la expresada finca. Después de un juicio la corte declaró sin lugar esa demanda y se interpuso esta apelación.

* NOTA: Véase el prefacio.

Al comenzar el juicio solicitó el demandante que la corte dictase sentencia a su favor por los méritos de la demanda y de la contestación, que están juradas, y habiendo sido negada esa solicitud alega ahora el apelante como primer motivo de su recurso que es errónea esa resolución. No existe tal error porque esa petición del demandante fué tardía, pues en el caso de *Ana María Sugar Co.* v. *Castro,* 28 D.P.R. 261, hemos declarado que tal moción debe ser hecha antes del día señalado para el juicio. Además la contestación controvierte hechos de la demanda pues niega que el demandante sea dueño de la cuerda de terreno que alega pertenecerle y también que no existe servidumbre sobre ella. *Miranda* v. *National Fire Ins. Co.,* 41 D.P.R. 291.

Podemos pasar ahora a exponer los hechos de este pleito según resultan de los documentos presentados por las partes, pues la prueba testifical no es de importancia fundamental en este caso.

Pascasia Serrano era dueña en 1907 de una finca de nueve cuerdas de terreno radicada en el barrio Islote del término municipal de Arecibo y como tal concedió permiso verbal a Plazuela Sugar Company para que pasara por su finca con un ferrocarril que estaba construyendo para transportar cañas de azúcar a su central. Al año siguiente, ese permiso se hizo constar por la dueña y por la central en un documento privado en el que intervinieron testigos. En ese documento la dueña ratificó mediante el precio de $25 el permiso que había concedido antes verbalmente. Años después, en 1913, la misma Pascasia Serrano y la corporación Plazuela Sugar Company otorgaron documento público ante notario en el que manifestando la señora Serrano ser dueña de la finca de nueve cuerdas de terreno cuya descripción hizo y la corporación que su vía férrea hecha de un modo permanente atraviesa la finca de la Serrano, y ambos que se ha practicado el deslinde de la faja de terreno que ocupa la vía férrea en una porción de 78 metros de largo por 8 de ancho, convino Pascasia Serrano en ceder y traspasar esa faja de terreno a la

central para uso de su vía férrea por la consideración del incremento de valor que la vía férrea da a la finca y por un dólar que confesó recibido, y en que mientras exista la vía férrea no hará acto alguno para impedir la circulación de los trenes de la Plazuela Sugar Company. Cinco años después, en 1918, vendió Pascasia Serrano a Arturo González Prado una cuerda de terreno de la mencionada finca por el precio de $250 que confesó ella haber recibido, haciéndose constar en la escritura que esa parcela está atravesada de este a oeste por una vía férrea de Plazuela Sugar Company, lo que también hizo constar el registrador en sus libros al hacer la inscripción de esa finca de una cuerda a favor de González Prado. Después de hecha esa inscripción presentó Plazuela Sugar Company en el registro para ser inscrita la escritura que en 1913 otorgó con Pascasia Serrano, pero dicho funcionario negó la inscripción y tomó anotación preventiva del documento por 120 días. Contra esa negativa no interpuso Plazuela Sugar Company el recurso judicial que autoriza la ley y tal documento no había sido inscrito al ser promovido este pleito. Posteriormente, en 1927, la finca de González Prado fué vendida por el Colector de Rentas para cubrir las contribuciones que debía, siendo comprada por Esteban Mena Díaz. Éste tampoco satisfizo la contribución de esa finca y el Colector de Rentas la vendió a Castor Colón, quien inscribió ese título en mayo de 1931 en el registro de la propiedad.

De lo expuesto se deduce que si bien Pascasia Serrano concedió una servidumbre de paso para una vía férrea sobre su finca de nueve cuerdas a favor de Plazuela Sugar Company, tal título de servidumbre no había sido presentado al registro para su inscripción cuando fué inscrita la venta de una cuerda a favor de González Prado, comprando éste así libre de tal gravamen, según el registro, por lo que no puede perjudicarle el título de servidumbre otorgado entre Pascasia Serrano y la Plazuela Sugar Company. Y aunque en la escritura de compra se hizo constar que la parcela de una cuerda

que le vendió Pascasia a González Prado está atravesada de este a oeste por una vía férrea de Plazuela Sugar Company, tal manifestación no es creadora de un título de servidumbre, pues como dice el Sr. Manresa en sus Comentarios al Código Civil Español, concordante en esa materia con el nuestro, tercera edición, tomo cuarto, página 613, "la escritura de compra de una finca en que se expresa que en esa finca existe un corredor, no es título de constitución ni de reconocimiento de servidumbre de vista ni aun de luces en favor del predio vendido, ni puede estimarse adquirida por prescripción tal servidumbre si no han transcurrido veinte años después del hecho obstativo, a partir del cual habían de contarse. Sentencia de 12 de diciembre de 1908."

Es cierto que después de hecha la inscripción a favor de González Prado y antes de que el apelante y su antecesor en inscripción compraran la finca de una cuerda en la subasta celebrada por el colector de rentas ya había presentado Plazuela Sugar Company la escritura pública que otorgó con Pascasia Serrano para que fuese inscrita, pero el registrador de la propiedad se negó a inscribirla y en su lugar tomó anotación preventiva de ella por 120 días como dispone la ley para tal caso, sin que durante ese tiempo fueran subsanados los defectos que según el registrador impedían la inscripción de tal documento. En conclusión, esa escritura no ha sido inscrita en el registro, al menos hasta que este pleito comenzó.

Si el registrador se equivocó al negar la inscripción de esa escritura, como entiende la corte sentenciadora, no es cuestión planteada por las alegaciones ni que pueda afectar los derechos de posteriores compradores de la finca o de parte de ella, porque el hecho es que, equivocada o acertadamente, no se hizo inscripción de ella, sin que la anotación por 120 días hecha por el registrador como consecuencia de su resolución produzca contra terceras personas los efectos de una inscripción, pues como dijo este tribunal en el caso de *Ramos et al.* v. *El Registrador*, 18 D.P.R. 76, esas anotaciones son

de carácter interino y caducan por el transcurso del término de 120 días que concede la ley para subsanar los defectos que impidan la inscripción del título y una vez caducadas sin que se hayan subsanado tales defectos, no producen efecto alguno contra tercero y carecen de fuerza para destruir derechos civiles de otra persona siendo el deber del registrador cancelar de oficio dichas anotaciones. Y en el caso de *Antonsanti* v. *Registrador*, 9 D.P.R. 190, se declaró que el objeto de esas anotaciones es garantizar el derecho de los interesados por el término de 120 días durante los cuales, si se presentare un nuevo título y subsanaren los defectos que impidan la inscripción, pueden inscribir su derecho retrotrayendo los efectos de la inscripción a la fecha de la anotación preventiva. Por consiguiente, esa anotación preventiva, caducada cuatro meses después de tomada, no perjudicaba a terceros compradores por sí sola, ni unida al hecho de que en la finca existe una vía férrea, porque esto es demostración de un hecho, pero no de que existe un derecho para que tal vía esté puesta allí. Sobre este particular dice el Sr. Morell en sus comentarios a la legislación hipotecaria, tomo segundo, página 667, lo siguiente:

"Cierto es que un signo aparente de servidumbre, es claro y visible, y que el uso de ella aparenta que existe. Pero esto no quiere decir que la servidumbre aparente haya de entenderse siempre tal servidumbre como legalmente constituída, porque no basta su apariencia, puede fundarse en una mera tolerancia, y puede, por tanto, desconocerse y evitarse si no se apoya en base legal alguna."

Esto en cuanto a terceras personas, pues en cuanto a Plazuela Sugar Company y Pascasia Serrano el contrato de servidumbre existe.

Como el título de servidumbre no ha sido inscrito en el registro veamos si por estar puesta la vía de la apelada desde 1907 en la finca de Pascasia Serrano y en la porción de una cuerda que vendió a González Prado y que ahora es del apelante, la central ha adquirido el derecho de servidumbre por prescripción por el transcurso de veinte años.

La cuestión antes enunciada no es nueva en este tribunal. En el caso de *Torres* v. *Plazuela Sugar Co.*, 24 D.P.R. 479, se dijo que si la colocación de una vía férrea sobre el terreno convierte la servidumbre en aparente podía entonces haber duda sobre si es necesario el documento escrito para adquirirla; pero en otro caso posterior, el de *González* v. *Plazuela Sugar Co.*, 42 D.P.R. 710, declaramos que como la servidumbre de paso de vía tiene, por su uso, el carácter de discontinua siempre, no puede haber duda de que para su adquisición se requiere título escrito, ya que al definir el artículo 539 de nuestro Código Civil (468 de la Edición de 1930) las clases de servidumbres, dice que son continuas aquellas cuyo uso es o puede ser incesante sin la intervención de ningún hecho del hombre; y que son discontinuas las que se usan a intervalos más o menos largos y dependen de actos del hombre. Y se dijo: ''En cuanto una servidumbre se use a intervalos más o menos largos, y dependa de actos del hombre, ya no cabe clasificarla más que como discontinua y así con la de vía para paso de un tren que sirve las cosechas de determinado fundo.'' Y también se dijo: ''La servidumbre discontinua, sea o no aparente, no puede adquirirse más que en virtud de título (artículo 546 Código Civil) y de que el título ha de ser constitutivo de la servidumbre, no deja duda alguna la lectura del artículo 547 del Código Civil, así como de que no puede una servidumbre de esa clase adquirirse por prescripción; algo perfectamente lógico, ya que los actos de uso, por no ser constantes, y tener un principio y un fin que se reproducen sin perfecta continuidad, no pueden crear prescripción.'' El Sr. Manresa en sus Comentarios al Código Civil, tomo 4, página 577; Scaevola en el tomo 10, página 157 y Morell sobre Legislación Hipotecaria, tomo 1, página 341, reconocen que la servidumbre de paso es discontinua. En cuanto a que no puede adquirirse por prescripción sino por título lo había resuelto este tribunal en el caso de *Nadal* v. *Muratti*, 34 D.P.R. 251, en el que tratándose de haber sido adquirida una servidumbre por prescripción dijimos lo si-

guiente: "El año de 1890 es de importancia decisiva porque con él comenzó a regir el Código Civil y desde su vigencia la servidumbre de que se trata sólo pudo adquirirse a virtud de título y aquí ni siquiera se ha invocado ese medio de adquisición."

El caso de la *Iglesia Católica* v. *Combate Tobacco Corp.*, 42 D.P.R. 376, no tiene aplicación al caso presente porque en aquél se trataba de una servidumbre de luces continua y aparente, ya que podía adquirirse por prescripción, por lo que de acuerdo con el artículo 544 del Código Civil y lo resuelto en *García* v. *García*, 25 D.P.R. 128, puede adquirirse de dos modos, por título o por prescripción de veinte años, mientras que la que estamos tratando ahora es discontinua porque necesita actos del hombre para su ejercicio y por esto sea o no aparente sólo puede adquirirse en virtud de título de acuerdo con el artículo 546 del Código Civil. El caso de *Alvarez* v. *Municipio*, 43 D.P.R. 521, tampoco tiene relación con el que resolvemos porque en él se trataba de una servidumbre de acueducto que este tribunal declaró era aparente y continua, que podía adquirirse por prescripción, y porque se declaró también por el resultado de la prueba que el demandante tenía conocimiento de dicha servidumbre antes de comprar la finca, mientras que en el caso actual se trata de una servidumbre que por ser discontinua sólo puede adquirirse por título, sea aparente o no; y porque si bien la finca que compró el demandante está atravesada por una vía férrea, ese hecho puede existir sin título de servidumbre, por mera tolerancia.

El mero hecho de estar puesta una vía férrea en una finca que se compra no impone deber alguno al adquirente de averiguar si el dueño de tal vía tiene título de servidumbre para ella y si es suficiente para crear tal derecho. Sostener lo contrario es hacer innecesaria la inscripción de ese título en el registro de la propiedad para que perjudique a tercera persona, porque bastará la colocación de la vía y que exista

un título de servidumbre aunque no esté inscrito en el registro.

Como no existe servidumbre de paso inscrita que pueda afectar la compra hecha por el apelante y como la clase de servidumbre a que venimos refiriéndonos no puede ser adquirida por prescripción, se hace innecesario resolver si tampoco será obligatoria tal servidumbre por haber obtenido el apelante la finca de una cuerda por compra en la venta hecha por El Pueblo de Puerto Rico para el cobro de contribución por ella debida.

La sentencia apelada debe ser revocada y dictarse otra declarando con lugar la demanda sin especial condena de costas.