FRANCISCO PACHECO, demandante y apelante, *v.* PLAZUELA SUGAR Co., demandada y apelada.

Núm. 7758.—*Sometido:* Mayo 9, 1939. *Resuelto:* Abril 18, 1940.

*Luis Mercader*, abogado del apelante; *G. Zeno Sama*, abogado de la apelada.

El Juez Asociado Señor Hutchison emitió la opinión del tribunal.

En acción negatoria de servidumbre, Francisco Pacheco alegó ser dueño de un condominio indiviso en una parcela de terreno en el barrio Islote del Municipio de Arecibo, que se describe con un área de cinco cuerdas, lindante al norte por la zona marítima, al sur y oeste con Matilde Rojas y al este con Antonia Campos. También alegó que la demandada, Plazuela Sugar Company, dueña de un ferrocarril privado, sin el consentimiento del demandante había fijado vías férreas de este a oeste a través de dicha finca y cruzaba la misma periódicamente con sus trenes.

La demandada negó que hubiera colocado sus vías a través de la finca descrita en la demanda o que corriera sus trenes por las mismas. Alegó que sus vías habían sido puestas en su propia finca en una faja de terreno adquirida por compra a Matilde Rojas en 20 de diciembre de 1918, situada en el barrio Islote de Arecibo, que medía 326 metros de largo por 8 metros de ancho, o sea 2,608 metros cuadrados, lindante al norte y sur con la finca de que había sido segregada, perteneciente para aquel entonces a Matilde Rojas, por el este con terrenos de Bonocio Campos y por el oeste con Blas Rojas. La demandada también alegó que Matilde Rojas posteriormente, en marzo 12 de 1925, segregó y vendió a Cruz, Francisco, María y Antonio Pacheco la parcela que se describe en la demanda, situada a ambos lados de la faja anteriormente vendida a la demandada; pero que este hecho no se hizo constar en la escritura de enajenación a los Pacheco, no obstate saber éstos que la faja por espacio de muchos años había sido propiedad de la demandada. Ésta negó otra alegación de la demanda al efecto de que el demandante había

solicitado de la demandada que descontinuara la explotación de sus trenes a través de esta finca. Alegó que el demandante no podía suplicar a la demandada que levantara las vías de una finca que era de la exclusiva propiedad y pertenencia de ella y que la había venido poseyendo por más de 18 años quieta, pública y pacíficamente, con buena fe y justo título.

El demandante apelante sostiene que la corte de distrito cometió error:

Al admitir la escritura que en 1918 hiciera Matilde Rojas, a pesar de haber sido inscrita en 1937, cuando ya el demandante Pacheco, desde el 1925, había adquirido e inscrito las cinco cuerdas libres de gravamen.

Al admitir como evidencia un plano que dijo haber preparado el testigo Julio Rodríguez en 1937.

Al declarar que el demandante debía probar que era condueño de la faja de terreno de que alega la demandada ser dueña.

Al declarar que la corporación demandada probó ser dueña de la faja de terreno por donde pasa la vía, a pesar de haber alegado que tal parcela forma parte íntegra de las cinco cuerdas adquiridas que fueron inscritas antes de que lo hiciera la demandada, infringiendo así el artículo 1362 del Código Civil (edición de 1930).

Al declarar que el demandante no es un tercero por el hecho de ser nieto de Matilde Rojas y porque el título de la demandada fué otorgado antes que el del actor; y además porque las vías eran ostensibles a la vista al comprar el demandante y sus hermanos en dichas cinco cuerdas.

Al interpretar la doctrina del tercero jurisprudencial, dándole un alcance que no tiene, y mucho menos para aplicarla al caso presente.

Al menospreciar la doctrina del caso de *Martínez* v. *Central Cambalache,* 48 D.P.R. 216, ratificada en 86 F. (2d) 37; y al aplicar en cambio la doctrina de "actual notice" del de *Colón* v. *Plazuela Sugar Co.,* 47 D.P.R. 871, desechada por el caso de Martínez.

Al pesar la evidencia de este caso, estableciendo juicios contrarios a la ley y al no imponer las costas a la demandada.

Antes de ofrecerse en evidencia el plano mencionado en el segundo señalamiento, Julio Rodríguez, ingeniero de transportación, declaró, sin objeción por parte del demandante, substancialmente lo siguiente:

El testigo había trabajado para la Plazuela Sugar Co. durante más de 34 años. Conocía a Francisco Pacheco y a sus hermanos. Éstos tenían una finca de cinco cuerdas en el barrio Islote de Arecibo lindante al norte con la zona marítima; por el oeste con Matilde Rojas y por el este con Antonia Campos. Conocía la finca porque con frecuencia pasaba por allí y porque estaba en el centro de una finca de Matilde Rojas. Las cinco cuerdas están atravesadas de este a oeste por una faja de 326 metros de largo por ocho metros de ancho perteneciente a la Plazuela Sugar Co. y por la vía de la Plazuela Sugar Co. La vía ha estado allí desde 1908. La Plazuela Sugar Co. había adquirido esa faja de Matilde Rojas en 1918 por la suma de $400. La faja lindaba por el sur con Matilde Rojas; por el norte con Matilde Rojas; por el este con Blas Rojas y por el oeste con Bonocio Campos 1ro. La finca de los Pacheco tenía de 50 a 60 metros de ancho. La faja de la Plazuela medía 326 metros de largo. La Plazuela Sugar Co. había estado en posesión de esa faja desde 1907, y desde 1918 también la había ocupado. A la Plazuela Sugar Co. nunca se le había molestado en su posesión. El testigo puso la vía sobre esa faja de terreno. Él tenía licencia como ingeniero de transportación, expedídale por el Gobierno de Puerto Rico. La parcela de cinco cuerdas no estaba dividida, aunque los Pacheco tenían un entendido entre sí y cada uno de ellos tenía un pedazo. Las cinco cuerdas están atravesadas por la faja de la Plazuela Sugar Co. La finca de los Pacheco está a ambos lados de esa faja. La faja, al momento del juicio, lindaba al norte con Diego Campos, los hermanos Pacheco, Bonocio Campos 2do., Antonia Campos, Francisca Campos y Antonia Campos Rojas; por el sur con Emeteria Campos, los hermanos Pacheco, Bonocio Campos 2do., Antonia Campos, Francisca Campos y Antonia Campos Rojas; por el este con Blas Rojas; y por el oeste con Bonocio Campos 1ro.

El testigo entonces identificó como hecho por él un plano que mostraba la faja perteneciente a la Plazuela Sugar Co., la finca de los Pacheco y toda aquella parte de la propiedad que había pertenecido a Matilde Rojas. La demandada ofreció el plano como prueba para demostrar la ubicación de la finca. El demandante se opuso fundado en que el plano tenía relación con la escritura de 1918, que fué inscrita en 1937 cuando el demandante y sus hermanos eran dueños de la parcela de cinco cuerdas, conforme demuestra la decla-

ración del testigo que había preparado el plano. La corte dijo que admitía el plano con el solo propósito de que el testigo ilustrara gráficamente la forma como él localizó la faja de terreno objeto de la servidumbre que se discute, mas no para determinar títulos de propiedad alguna sobre la finca. No hallamos que la corte cometiera error al así resolver. Sea ello como fuere, el plano nada agregó al testimonio ya admitido sin objeción del demandante y el error, de haberlo, no fué perjudicial.

■ El artículo 1362 del Código Civil (edición 1930) lee así:

"Si una misma cosa se hubiese vendido a diferentes compradores, la propiedad se transferirá a la persona que primero haya tomado posesión de ella con buena fe, si fuere mueble.

"Si fuere inmueble, la propiedad pertenecerá al adquirente que antes la haya inscrito en el registro.

"Cuando no haya inscripción, pertenecerá la propiedad a quien de buena fe sea primero en la posesión; y faltando ésta, a quien presente título de fecha más antigua, siempre que haya buena fe."

■ Para los fines de esta opinión podría admitirse que en el presente caso hubo una doble venta de la faja adquirida por la Plazuela Sugar Co. en 1918.

Los hermanos Pacheco habían cultivado la finca con anterioridad a la fecha en que adquirieron las cinco cuerdas en 1925. Tenían conocimiento expreso del hecho de que la vía de la Plazuela Sugar Co. atravesaba la finca.

En *Colón* v. *Plazuela Sugar Co.*, supra, este tribunal dijo:

"El criterio sostenido por el Tribunal Supremo de España nos parece justo y razonable, porque se ajusta a las realidades de la vida e interpreta con cierta flexibilidad los preceptos de la Ley Hipotecaria sin quebrantar los principios en que la misma se inspira. Estamos de acuerdo con el Sr. Morell en que un signo aparente de servidumbre no siempre significa que la servidumbre ha quedado legalmente constituída, puesto que puede fundarse en una mera tolerancia; pero entendemos que ese signo aparente es bastante para poner sobre aviso a todo el que trate de llevar a cabo alguna negociación con el supuesto predio sirviente para que actúe con cautela

y procure cerciorarse de la verdad. La investigación es muy sencilla y fácil, porque aun en caso de que el dueño del predio sirviente ocultase la información, no la ocultaría el dueño del predio dominante, qüien, por otra parte, estaría impedido de volver sobre sus propios actos si se negase a descubrir la verdad.

❋     ❋     ❋     ❋     ❋     ❋     ❋

''No hay duda de que los rieles tendidos sobre su propiedad en forma de vía están indicando ostensiblemente el paso por la misma de locomotoras. ¿Constituyen estos rieles un signo aparente de la probable existencia de una servidumbre? Opinamos que sí. Descartando la prescripción y los elementos que intervienen para darle vida, sobre lo cual no queremos adelantar juicio alguno, esos rieles únicamente podrían estar allí por el consentimiento o la mera tolerancia del dueño del predio sirviente o en virtud de título. Ahora bien, si éstos son los hechos, si ésta es la realidad palpable para todo el que tenga el propósito de adquirir el inmueble, ¿no parece natural y razonable que procure cerciorarse de la verdad antes de cerrar la negociación?

''La jurisprudencia americana sostiene que el comprador de un inmueble que está sujeto a servidumbre tiene conocimiento de la misma siempre que sea aparente mediante una inspección ordinaria de la propiedad. Y considera que es sana la regla que sostiene que los signos visibles indicando la servidumbre o el conocimiento real de algún hecho que indique su existencia generalmente pone al comprador sobre aviso para que trate de inquirir, debiendo considerarse que si no inquiere, la investigación, en caso de haberse llevado a cabo, hubiese descubierto la verdad. Notas, 41 A.L.R. 1442, 74 A.L.R. 1250.''

No hallamos que la doctrina del caso de Colón fuera descartada en el de *Martínez* v. *Central Cambalache,* supra. Ella fué seguida y reafirmada en el caso de *Félix del Llano & Cía.* v. *Plazuela Sugar Co.,* 55 D.P.R. 583.

Los dos primeros párrafos del sumario del caso de *Quintana* v. *La Capital de Puerto Rico,* 51 D.P.R. 106, leen así:

''Aquél que compre de quien aparezca como dueño en el registro con conocimiento de una venta anterior no inscrita, no es un comprador o tercero de buena fe.

''Aquél que adquiera con conocimiento de la existencia de una venta y títulos anteriores a favor de otra persona, no puede derro-

tar a ésta bajo el párrafo segundo del artículo 1362 del Código Civil (ed. 1930) obteniendo una escritura e inscribiéndola antes que el otro.''

Hace más de treinta años que en el caso de *Ramos* v. *Orcasitas,* 14 D.P.R. 68, 79, este tribunal, hablando por voz del Juez Figueras, se expresó así:

''Es verdad que Q. Mucius Scaevola en su Jurisprudencia del Código Civil dice que sin honrada intención no es factible acogerse al premio que el artículo 1473 del Código Civil otorga al primero de los dos compradores de una misma cosa raíz que llega primero al registro de la propiedad.

''Esa opinión nos causa respeto por ser moralizadora, pero no resulta de autos que aquí se haya procedido sin honrada intención por los que al registro llegaron primero.''

De la opinión emitida en el caso de *Yee* v. *Frank L. Strong Mach. Co.,* 37 Jurisprudencia Filipina 672, 676, 678, tomamos el siguiente extracto:

''Se ha insinuado que, puesto que el artículo 1473 del Código Civil requiere 'buena fe', en términos expresos, en lo que se refiere a la 'posesión' y 'título', pero no expresa requisito alguno en cuanto a la 'buena fe' en relación con la 'inscripción' de la propiedad en el registro, debe presumirse que la buena fe no constituye un requisito esencial de la inscripción para que produzca los efectos que este artículo ha previsto. No podemos estar conformes con esta pretensión. No ha podido ser la intención del legislador la de fundar el derecho de prelación garantido por este artículo del Código en la inscripción del dominio de mala fe. Si se diera tal interpretación al texto de este artículo se abrirían las puertas al fraude y a la confabulación. Los documentos públicos no pueden convertirse en instrumentos de fraude y de opresión por parte de aquel que de mala fe obtiene la correspondiente inscripción. La fuerza y efecto atribuídos por la ley a la inscripción en los registros públicos presupone la buena fe del que obtiene tal inscripción; y los derechos creados por la ley, que están fundados en la inscripción en un registro público, no pueden derivarse ni se derivan de una inscripción de 'mala fe' en beneficio de la persona que en tal forma obtiene la inscripción.

''Interpretando el segundo párrafo de este artículo del Código, el Tribunal Supremo de España ha declarado en su sentencia de 13 de mayo de 1908, que:

" 'Este precepto ha de entenderse siempre sobre la base de la buena fe prescrita en el párrafo 1ro., por lo que, apreciado que los segundos compradores que inscribieron tenían conocimiento de la venta anterior, ha de resolverse la cuestión por el párrafo siguiente.' (Nota 2, art. 1473, Código Civil, Medina y Marañón, edición de 1911.)

" ' 'Si bien el artículo 1473, en su segundo párrafo, establece la preferencia para el título traslativo de dominio del inmueble primeramente inscrito, este precepto ha de entenderse siempre sobre la base de la buena fe prescrita en el párrafo primero, por no poderse entender que el legislador haya querido borrar y sancionar la *mala fe* sólo por el cumplimiento de una mera formalidad que ni en las verdaderas cuestiones entre terceros prevalece en determinados casos.' (Nota 2, art. 1473, Código Civil por la redacción de la Revista de los Tribunales, décimatercera edición.)

\*　　　\*　　　\*　　.　\*　　　\*　　　\*　　　\*

" 'El que compra bienes inmuebles sabiendo que el vendedor tiene un título defectuoso o que carece de título, no puede alegar que ha adquirido el derecho de propiedad de buena fe por lo que respecta al verdadero dueño del terreno o del que tiene una participación en él; y debe aplicarse este mismo principio al que está enterado de hechos que le obligarían a hacer las pesquisas e investigaciones que fueren necesarias para descubrir los defectos de que adolece el título del vendedor. El comprador no puede cerrar los ojos a hechos que pondrían en guardia a un hombre razonable y alegar después que obró de buena fe, en la creencia de que el título del vendedor carecía de defectos. El mero hecho de negarse a creer en la existencia de tales defectos, o el de cerrar voluntariamente los ojos ante la posibilidad de que el título del vendedor adoleciera de algún defecto, no le convertirá en comprador de buena fe a título oneroso, si posteriormente resultara que el título adolecía en realidad de defectos, y constase que estaba enterado de la existencia de los mismos hasta tal punto que le hubiese hecho descubrirlos si hubiese procedido con la cautela que puede razonablemente exigirse a un hombre prudente en análoga situación. La buena fe, o la falta de buena fe, es, en último término, cuestión de intención; pero para determinar la intención que uno tiene en un momento dado, nos vemos forzosamente supeditados a las pruebas relativas al modo de proceder y a los actos externos mediante los cuales únicamente pueden determinarse con seguridad los actos internos. Así es que la 'honradez en la intención', 'la intención lícita y honrada'. que constituyen la buena

fe, presuponen 'estar ajeno al conocimiento y a las circunstancias que deben ponernos en el terreno de la investigación', de lo que resulta que la prueba de que ha existido tal conocimiento desvirtúa la presunción de buena fe que los tribunales siempre suponen en defecto de prueba en contrario. 'La buena fe o la ausencia de ésta no constituye un hecho visible ni tangible que pueda verse o palparse, sino que es, más bien, un estado o condición del ánimo, del cual sólo puede formarse juicio por motivo de signos reales o ficticios.' (Autoridades).''

Francisco Pacheco debió estar sobre aviso al tener conocimiento de la existencia de la vía de la Plazuela Sugar Co. sobre el terreno al tiempo en que él adquirió la propiedad. No podía cerrar sus ojos con respecto a cosas que herían la retina del observador más casual y más tarde invocar con éxito el segundo párrafo del artículo 1362 del Código Civil para destruir el título que la Plazuela Sugar Co. tenía sobre el terreno en el cual fué colocada su vía. Ningún adquirente de terrenos que han sido objeto de ventas anteriores, que no sea también un comprador inocente, puede escudarse tras la letra de la ley.

*La sentencia apelada debe ser confirmada.*
El Juez Asociado Sr. Wolf disintió.*