EL PUEBLO DE PUERTO RICO, demandante y apelado; *v.* EMETERIO ORTIZ, acusado y apelante.

No. 5109.—*Sometido:* Noviembre 21, 1933.   *Resuelto:* Noviembre 29, 1933.

*Juan Valldejuli,* abogado del apelante; *R. A. Gómez, Fiscal,* abogado de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Emeterio Ortiz fué declarado culpable de un delito de acometimiento y agresión con circunstancias agravantes y condenado a seis meses de cárcel y al pago de las costas. No conforme el acusado apeló de la sentencia, por entender que

la misma es contraria a la prueba, que no se ha establecido el delito imputado y que es también el producto de un proceso de parcialidad, prejuicio y pasión por parte del juez sentenciador. Declararon en este caso Ramón Charriez, Faustino Correa y la supuesta perjudicada Agripina Pagán, como testigos de la acusación, y Antonio Delgado y el acusado Emeterio Ortiz como testigos de la defensa. Los testigos Ramón Charriez, Faustino Correa y Antonio Delgado no presenciaron los hechos. El fallo de la corte inferior se basa en la declaración de Agripina Pagán, que fué la única persona que declaró sobre la agresión de que se acusa a Emeterio Ortiz. Al acusado se le imputó, de acuerdo con la denuncia, un delito de acometimiento con circunstancias agravantes. Se alega que el denunciado es un varón adulto y que de una manera ilegal y violenta, y con intención de causar grave daño corporal a la denunciante, como se lo causó, la acometió y agredió con un foete de cuero, dándole dos foetazos.

Agripina Pagán declara substancialmente que conoce a Emeterio Ortiz, con el cual vive, y que en 13 de agosto de 1932, por la noche, la declarante se hallaba en casa de su mamá y el acusado la esperaba en la casa donde vivían; que al regresar a su casa el acusado le preguntó qué hacía por allá y la testigo le contestó que estaba arreglándole la cama a su mamá que no se podía mover; que entonces entraron en una discusión y trancaron la casa y comenzaron a pelear; que Emeterio Ortiz le tiró una gaznatada y no le hizo nada más; que pelearon; que ella juró la denuncia en la Corte Municipal de Yabucoa y que fué a denunciar a Emeterio Ortiz porque le dió una gaznatada y empezaron a pelear en la casa con la casa trancada; que él cogió una silla para tirarle y cuando le fué a tirar se agarró del foete y se dió un golpe; que el golpe que se dió fué con la mesa; que el acusado le dió con el foete en el muslo; que no conserva marca del golpe; que anteriormente no le había pegado nunca con un foete; que el acusado le dió el golpe del muslo cuando levantó el

foete; que había una mesa de punta y que con la mesa se dió el golpe y supuso que fué con el foete.

Preguntada por el juez si no había dicho antes al fiscal que ese golpe se lo dió el acusado con un foete, contestó: "Sí, pero otro golpe que tenía fué con la mesa."

La declaración de la testigo terminó del modo siguiente:

"Hon. Fiscal: Dígame, señora, ¿no me declaró usted ahorita a preguntas mías que este señor le había pegado con el foete?

"R.—Sí, señor, me dió con el foete; pero otro golpe que yo tenía me lo había dado con la mesa.

"P.—¿Entonces él le dió con el foete, y además usted se dió ese otro golpe con la mesa? Conteste con la boca.

"T.—Sí, señor."

En esta prueba se basó la corte inferior para pronunciar su fallo declarando culpable a Emeterio Ortiz del delito de acometimiento y agresión grave.

Se acusa a la corte inferior de pasión, parcialidad y prejuicio. Esta acusación se basa en haber dicho la corte sentenciadora, al pronunciar su fallo, que Agripina Pagán, queriendo hacer al acusado todo el bien posible, no dijo toda la verdad de los hechos, sino una parte de los mismos a la cual dió crédito el tribunal inferior. También se critican las palabras de la corte al decir que era un delito "grave, muy grave, agredir a una mujer, y sobre todo agredirla con un foete que es un instrumento que su empleo implica deshonor para la persona agredida."

Arguye el acusado que el testimonio de Agripina Pagán no pudo merecer crédito, y no lo mereció, cuando el mismo tribunal lo expresa en su sentencia. Añade que la corte inferior, mediante un proceso de deducción dice haber descubierto una parte de la verdad de la testigo y que sobre este sector de verdad que la corte dice haber visto es que se basan las palabras llenas de prejuicio y parcialidad vertidas por el tribunal sentenciador. Al argumentar el caso ante nosotros, el abogado del acusado nos dijo que siendo la declaración de

Agripina Pagán falsa en parte, ha debido ser desestimada en su totalidad.

Conviene advertir que la corte inferior basa su fallo en la parte de la verdad que a su juicio produjo Agripina Pagán, a la cual dió crédito, haciendo constar que la testigo no había dicho toda la verdad, queriendo beneficiar al acusado. La máxima *Falsus in Uno, Falsus in Omnibus* no es aplicable en nuestros tiempos con la invariable rigidez que se interpretó en el pasado. Refiriéndose a esta máxima, dice Wigmore en el tomo segundo, página 499, de su obra sobre Evidencia:

"Puede decirse, de una vez y para siempre, que la máxima en sí carece de eficacia, primero, porque, en punto a validez, meramente contiene de manera vaga el germen de una verdad que nadie necesita que se le enseñe, y en las otras es absolutamente falsa como máxima de la vida; y, en segundo término, porque, en punto a utilidad, meramente dice al jurado lo que éste puede hacer en todo caso, y no lo que debe o no debe hacer, y, por tanto, es una superflua combinación de palabras. Además, en la práctica resulta perniciosa, en primer lugar, porque frecuentemente surge una mala inteligencia respecto a su propia fuerza, y, en segundo término, porque se ha convertido en manos de muchos abogados en un mero instrumento para obtener nuevos juicios a base de puntos que de por sí carecen en absoluto de importancia."

La noción original asociada a esta máxima de que debe rechazarse necesariamente como indigno de crédito el testimonio de una persona que ha incurrido parcialmente en falsedad, no prevalece en el día de hoy. "Esta noción," dice Wigmore, "era compatible con la filosofía artificial del testimonio que prevaleció hasta una fecha tan avanzada como el año 1700, y fué eliminada de la ley mucho después de haber perdido prácticamente su aceptación social como resultado de la aguda crítica de Bentham."

En la página 450 de la obra citada, dice Wigmore:

"Pero a pesar de haber sido perpetuada descuidadamente esta noción artificial por algunas decisiones, ha dejado de ser la ley de Inglaterra desde los comienzos del Siglo XVIII. Hay dos razones que demuestran cuán poco sana es esta noción como una regla de

derecho. No responde a la naturaleza humana. No es exacto que una persona que dice una simple mentira esté mintiendo necesariamente en todo su testimonio y no existe una fuerte probabilidad de que esté así mintiendo. La probabilidad es en contrario. El jurado es parte del tribunal encargado de formar una conclusión con respecto a la veracidad del testimonio ofrecido. Tiene absoluta libertad para creer o no creer a un testigo determinado. Una vez que el testigo ha sido considerado por el juez como capacitado para declarar, la creencia sobre sus manifestaciones descansa exclusivamente en el jurado. Por lo tanto, el juez no puede legalmente exigirles que crean o que dejen de creer una porción del testimonio.''

''El correcto principio,'' añade Wigmore, ''no va más allá de declarar que el jurado puede, y no que debe, desestimar el testimonio.'' En el presente caso la corte inferior apreció la prueba, creyendo que la perjudicada Agripina Pagán no había producido todos los hechos, pero que había dicho bastante para hacer surgir en el ánimo del juzgador el convencimiento de que había sido agredida con un foete por el acusado. Se calificó el delito de muy grave. Las palabras vertidas por la corte al pronunciar la sentencia, no bastan para hacer surgir la conclusión de parcialidad, pasión o prejuicio que le atribuye el acusado. Tampoco debemos intervenir en el ejercicio de la discreción judicial al imponer la pena.

*Debe confirmarse la sentencia apelada.*