ANDRÉS QUINTANA REYES, demandante y apelante, v. LA CAPITAL DE PUERTO RICO, demandada y apelada.

Núm. 6970.—*Sometido:* Febrero 7, 1936. *Resuelto:* Marzo 5, 1937.

*Andrés Quintana Reyes,* por su propio derecho; *Juan Valldejuli Rodríguez,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

Fundamental y esencialmente el presente caso envuelve la interpretación del artículo 1362 del Código Civil (edición de 1930) que lee así:

"Si una misma cosa se hubiese vendido a diferentes compradores, la propiedad se transferirá a la persona que primero haya tomado posesión de ella con buena fe, si fuere mueble.

"Si fuere inmueble, la propiedad pertenecerá al adquirente que antes la haya inscrito en el registro.

"Cuando no haya inscripción, pertenecerá la propiedad a quien de buena fe sea primero en la posesión; y faltando ésta, a quien presente título de fecha más antigua, siempre que haya buena fe."

El Municipio de San Juan adquirió dos fincas de Luis de la Cruz y esposa, una de ellas en 1925 y la otra en 1926. Las dos fincas deben ser consideradas como una unidad. Sobre este terreno el municipio construyó en 1927 un edificio escolar, conocido con el nombre de Escuela Dr. Francisco Hernández, y desde entonces el edificio ha sido continuamente utilizado para fines educativos.

Por alguna razón difícil de entender, cuando el municipio adquirió primeramente las fincas dejó de inscribir las compraventas en el registro. Fué tan sólo allá para el 27 de septiembre de 1933 que el municipio trató de obtener la inscripción. Ésta le fué denegada debido a que el título sobre la misma propiedad figuraba a nombre de Andrés Quintana Reyes.

Por el momento no es necesario que sigamos todos los pasos mediante los cuales Andrés Quintana Reyes logró la inscripción en el registro de la propiedad. Su predecesor en título, Cipriano Manrique Gil, era acreedor por sentencia de Luis de la Cruz y como tal acreedor victorioso ejecutó su sentencia sobre la propiedad en controversia.

En la corte inferior surgió la cuestión de si el deudor Luis de la Cruz no había pagado la reclamación que Cipriano Manrique tenía en su contra. Asumiremos con la corte inferior que a no ser por las reclamaciones del municipio Cipriano Manrique Gil obtuvo un buen título. En todos los procedimientos en que Manrique Gil adquirió título Andrés Quintana Reyes era un agente especial. En el pleito que luego se inició hubo otras tentativas para atacar la buena fe del título de Quintana Reyes.

El municipio tomó posesión de esta finca al construir sobre la misma y todavía continúa teniéndola y poseyéndola. El 18 de mayo de 1933, Andrés Quintana Reyes instó pleito de reivindicación contra la Capital de Puerto Rico, o sea, contra la

Ciudad de San Juan. La demandada radicó una contra-demanda basada en varios fundamentos y solicitó que el título a nombre de Quintana Reyes fuese cancelado y la propiedad inscrita a nombre del municipio. En junio 30 de 1934, se dictó sentencia declarando sin lugar la demanda y con lugar la contrademanda, y en su consecuencia anulando las inscripciones que constaban en el registro.

La corte en su opinión concluyó o resolvió, según sea el caso: (a) que Quintana Reyes ha residido en San Juan desde 1912; (b) que desde 1926 en el solar ha estado enclavado un amplio edificio escolar; y que se aprobaron ordenanzas municipales autorizando primero la compra del terreno y más tarde la construcción del edificio sobre el mismo; (c) que Luis de la Cruz declaró haber manifestado a Quintana en cuatro o cinco ocasiones que el terreno no era suyo, y que él lo había vendido a la ciudad, y que también había informado de este hecho a Manrique en presencia de Quintana. Sucede que Manrique Gil en el pleito por él entablado contra Luis de la Cruz obtuvo un embargo para asegurar la efectividad de la sentencia, y que la información dada por De la Cruz a Manrique Gil y a Quintana Reyes tuvo lugar antes de practicarse el embargo.

A juicio de la corte había otras consideraciones sin importancia y es también un hecho que Quintana nunca ha pagado contribuciones sobre la propiedad. La corte dijo que existía otra prueba que tendía a probar la notificación a Manrique Gil y a Quintana Reyes.

Dejando a un lado los otros razonamientos de la corte de distrito para fundar su sentencia sobre los cuales existe divergencia de criterio entre los jueces de esta Corte Suprema que intervinieron en la vista del recurso, hay uno—el del conocimiento por parte de Manrique y de Quintana—que nos lleva a todos a la confirmación del fallo recurrido.

Asumiremos por el momento, sin discutir los detalles, que Manrique Gil y Quintana Reyes tenían conocimiento de que Luis de la Cruz había vendido la propiedad al municipio y

que ellos obtuvieron sus distintos títulos con pleno conocimiento y aviso de los derechos del municipio.

La definición exacta del tercero ha sido objeto de seria discusión por los comentaristas de la Ley Hipotecaria desde que vió la luz pública esa gran obra de legislación.

Galindo y Escosura, en su tratado sobre Legislación Hipotecaria, volumen 2, páginas 305, 306 y 307, sostienen el criterio de que la persona que adquiere una finca de otra que según el registro tiene derecho a vender, recibe un título que una vez inscrito, es inatacable a no ser por aquél de quien la hubo inmediatamente, irrespectivamente del conocimiento que el comprador tuviera de una venta anterior no inscrita hecha a otra persona. Incluyen al notario y a los testigos que intervinieron en la primera escritura de compraventa, como terceras personas que más tarde pueden adquirir del vendedor y al inscribir derrotar al primer adquirente. La Serna era el propulsor más importante del criterio contrario. Barrachina, en su Tratado sobre Derecho Hipotecario y Notarial, tomo 1, página 231, y siguientes, hábilmente sustenta el criterio contrario y el del Tribunal Supremo de España al efecto de que aún bajo la Ley Hipotecaria uno debe prestar debida consideración a la cuestión de buena o mala fe, y de que aquél que adquiere con conocimiento de la existencia de una venta y título anteriores a favor de otra persona no puede derrotarla obteniendo una escritura e inscribiéndola antes que el otro. Convenimos en gran parte con lo que dice a este respecto (pág. 239), así:

"Moscoso sostiene que la ley Hipotecaria prescinde por completo de la buena o mala fe; ¿Qué, acaso esta ley no pertenece al Derecho civil? ¿No dice el Código en su artículo 433 que se reputa poseedor de buena fe al que ignora que en su título o modo de adquirir exista vicio alguno que lo invalide? Pues ese testigo que ha comprado de quien sabía que no era el dueño, precisamente porque concurrió al otorgamiento de la escritura primitiva de enajenación, le constaba que su título era vicioso, adquirido de mala manera. Si al otorgar la escritura a su favor no recordaba aquella intervención, pudo enterarse por los medios que tuviera a su alcance; esto en el

supuesto de que quisiera proceder de buena fe; lo cual no excluye que haya casos en que sí le constan al testigo lo que luego pretexte ignorar. Para que no haya tales diferencias, la ley, previsora, no concede la inmunidad de tercero a ninguno de los que hayan intervenido en el acto o contrato, ni a los que lo presenciaron e impresionó sus sentidos.''

y luego en la página 246:

''La Ley no excluye del carácter de tercero al Notario y testigos solamente, dada la interpretación natural del artículo 27, sino que comprende a todos, sean o no intervinientes, que tengan conocimiento de la causa de nulidad; a los que sabiendo que uno no es dueño de la finca por haberla enajenado, sin embargo de ello la compra; pues es un adquirente de mala fe, en razón a que no ignoraba que en su título o modo de adquirir había vicio que lo invalidaba (art. 433 del Código); éste y no otro es el sentir de la jurisprudencia del Tribunal Supremo que en este mismo capítulo hemos citado.

''La Ley no quiere que en el título del inscribiente haya mácula alguna; exígele limpieza de origen; claro está que como la buena fe se presume siempre, salvo prueba en contrario (S. 5 Junio de 1894) quien pretenda invalidar el título del comprador, fundado en que éste conocía la venta anterior, deberá justificarlo, venciendo esa presunción *juris tantum,* cosa que no ocurriría si el inscribiente del doble contrato hubiese tenido intervención oficial en el primero, a título de Notario o en clase de testigo.''

*Blanco* v. *Hernández,* 18 D.P.R. 711 sostiene la conclusión que inmediatamente precede.

El apelante se funda en el caso de *Escalera* v. *West India Oil Company,* 43 D.P.R. 574, pero dicho caso no sostiene su contención una vez probado que el apelante tenía conocimiento de los derechos del municipio y no era por tanto un tercero de buena fe, condición ésta que concurría en la West India Oil Company en el caso que contra ella siguiera Cristina Escalera Falú. Véase lo que a este respecto dice la opinión de esta corte emitida por su Juez Asociado Sr. Aldrey. Es como sigue:

''Sostiene la apelada que la apelante **no es un tercero de buena** fe porque del hecho que admitió como prueba y que hemos copiado aparece que al comprar tenía conocimiento de la **adquisición hecha**

por Cristina Escalera Falú, pero el expresado hecho transcrito no admite tal interpretación sino la contraria de que hasta que se le notificó la demandada no tuvo conocimiento de la compra que había hecho la apelada y de que ella alegara ser dueña. Por consiguiente, como la apelante compró ignorando la anterior venta hecha a la apelada y sin constancia de ello en el registro es un comprador de buena fe, sin que pueda decirse, como declaró el tribunal inferior, que no era un tercero de buena fe porque tenía o debía tener conocimiento de que el solar no era propiedad de su deudor cuando la apelada lo adquirió, pues no hay hecho alguno que demuestre que tenía tal conocimiento, ni debía tenerlo porque ignoraba esa venta, de la que tampoco le daba noticia el registro de la propiedad. El caso de *Blanco* v. *Hernández,* 18 D.P.R. 711, citado por la apelada, no apoya la sentencia recurrida pues descansa en la teoría de que la persona allí demandada no era tercero de buena fe porque antes de comprar sabía que el condominio a que se refiere había sido vendido, lo que no ocurre en el presente caso.''

Llegamos entonces a la cuestión de si el aviso a Quintana Reyes fué demostrado suficientemente. El apelante insiste en que Luis de la Cruz no era digno de crédito por varias razones, y en particular por haber negado que jamás hiciera que la subasta fuese suspendida cuando la verdad era lo contrario. Esto pudo haber sido debido a falta de memoria o a haber dejado el letrado de hacer que su cliente se diera cuenta de lo que ocurría, o es susceptible de otras explicaciones. Sin embargo, aún si Luis de la Cruz no decía la verdad con respecto a estas suspensiones, no podemos resolver que debe aplicarse la máxima *falsus in uno, falsus in omnibus.* No obstante, la corte inferior tenía derecho a creer parte del testimonio de este testigo y evidentemente así lo hizo. Hemos considerado la aplicabilidad de esta máxima en el caso de *Pueblo* v. *Ortiz,* 45 D.P.R. 835.

*Debe confirmarse la sentencia apelada.*

Los Jueces Asociados Señores Córdova Dávila y Travieso no intervinieron.